**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**TERRELL LEBEAUX WARREN**                    **CIVIL ACTION**

**VERSUS**                                    **NO. 11-2282**

**BENJAMIN GELLER, et al.**                   **SECTION: "G" (1)**

## ORDER AND REASONS

Before the Court is Defendant Genworth Life and Annuity Insurance Company's ("Genworth") Motion for Summary Judgment.[1] After considering the motion, the memorandum in support, the opposition, the reply, and the plaintiff's opposition to Genworth's statement of uncontested facts, the Court will grant in part and deny in part the pending motion.

## I. Background

### A. Factual Background

Plaintiff Terrell LeBeaux Warren ("Plaintiff") filed the complaint in this action on September 12, 2011.[2] However, on August 21, 2012, Plaintiff filed an amended complaint that supersedes the initial complaint.[3] The amended complaint names Benjamin Geller ("Geller"), Arlyn Nelson ("Nelson"), Virginia Insurance Company ("Virginia Insurance"), GE Life and Annuity Assurance Company ("GE"), Genworth, and Continental Casualty Company ("Continental") as defendants.[4] Plaintiff explains that at all pertinent times, Nelson was an "insurance agent broker" for GE, Virginia

---

[1] Rec. Doc. 101.

[2] Rec. Doc. 1

[3] Rec. Doc. 57.

[4] *Id.* at ¶ 2.

1

Life, and/or Genworth, and that all insurance companies "are entangled professionally and by contract, buyouts and mergers."[5] Hereinafter, these three insurance company defendants will be referred to collectively as "Genworth."

Geller was a sports agent and financial adviser to decedent Frank Warren ("Warren"). Plaintiff is the widow of Frank Warren. In 1994, Geller suggested to Warren that he purchase a life insurance policy from Nelson. Plaintiff claims that Nelson and Geller prepared an application for a policy reflecting that the beneficiary was "Frank Warren Irrevocable Trust." Plaintiff alleges that "Geller and Nelson would later change the beneficiary to Geller as trustee for the Frank Warren Irrevocable Trust."[6]

Plaintiff alleges that Nelson represented himself to be a licensed insurance broker, but in fact this was false, and he was not licensed as an agent to sell insurance in the State of Louisiana. Nonetheless, on September 26, 1994, Nelson "prepared and filled out" an application of a $1,000,000 life insurance policy for Warren and mailed the application to Geller. Geller had Warren sign the document in New Orleans, Louisiana, and it was sent back to Geller in Washington State.[7]

On September 26, 1994 "Nelson then signed the application in Washington State ... purporting to have witnessed the signing of the application document by [Warren]. The document indicates and shows [Warren] signed the document in Washington State." The document was then sent to the underwriting department of Genworth.[8]

---

[5] *Id.* at ¶¶ 3-4.

[6] *Id.* at ¶ 9.

[7] *Id.* at ¶¶ 10-11.

[8] *Id.* at ¶ 12.

Plaintiff claims that Genworth wrote a policy even though it never received trust documents or a tax identification number, which did not exist because a valid trust was never in fact created. "The premiums on the $1,000,000.00 policy were to be paid by funds generated from the policy by the alleged trustee, Geller on behalf of the alleged trust." Plaintiff claims that Geller and Warren "had a falling out" and Warren "took steps to protect himself from Geller's actions."[9] Warren notified Genworth that he no longer was represented by Geller, and Genworth informed Warren that he should continue to make his premium payments if he wanted the policy to remain in effect.[10]

According to Plaintiff, at this time Genworth checked its records, and became aware that Nelson never produced the trust document or the tax identification number. Nelson allegedly informed Genworth that "he had not submitted the insurance trust documents or tax identification number because there was no trust document or tax identification number."[11] Upon receiving this information, Plaintiff claims that the billing and underwriting departments of Genworth informed Warren that they had removed Geller from the policy as a beneficiary, and would no longer share or send any information to Geller. Further, the policy was only in Warren's name now.[12]

Plaintiff alleges that Genworth "made changes to take Geller out of the loop completely." This included removing Geller as a beneficiary and removing Geller's address and inserting Warren's for all future notices. Warren paid all premiums until his death in 2002. Throughout this time, Genworth did not contact Geller in reference to this trust.

---

[9] *Id.* at ¶¶ 14-15.

[10] *Id.* at ¶ 16.

[11] *Id.* at ¶ 17.

[12] *Id.* at ¶ 18

Plaintiff claims that after the events that prompted Genworth to review its records, it knew "that no trust existed, knew that Geller was not involved, and knew or should have known that the owner of the life insurance proceeds, in the event of Frank Warren's death, would be the estate and his heirs, not the alleged Trustee, Geller or the non-existent trust."[13]

Nonetheless, upon Warren's death, Plaintiff alleges that "Nelson and Geller re-entered the picture," and Nelson made a claim to Genworth for payment of $1,000,000 under the policy to be paid to Geller as trustee. Plaintiff claims that Genworth knew that there was no trust and that Geller had not been involved in this transaction for several years. Genworth requested again for Nelson to produce the trust documents and tax identification number, but instead Nelson "negligently convinced them to accept his and Geller's representations, that a trust existed," and the funds were released to them.[14]

Plaintiff contends that Genworth breached a contract and a fiduciary duty when it released the funds to Nelson and Geller. Plaintiff also alleges that Nelson and Geller told Warren's heirs that they would invest the money, but were bound by the trust and would have to abide by it, which the heirs believed.[15] Over the years, Plaintiff received monthly payments, and were assured by Geller and Nelson that the funds would be perpetual. However, payments began to decrease, and Plaintiff was "unable to secure valid rational responses from Geller and Nelson."[16]

In 2010, Plaintiff retained an attorney who requested records of trust documents and financial

---

[13] *Id.* at ¶ 21.

[14] *Id.* at ¶¶ 23-24.

[15] *Id.* at ¶ 26.

[16] *Id.* at ¶ 27.

statements from Geller and Nelson. Nelson communicated that he did not have the document, but that Geller could provide the information. Plaintiff, still believing there was a trust, had her attorney seek to remove Geller and Nelson as trustees. After some disagreement, Geller and Nelson agreed to resign as trustees.[17] According to Plaintiff, Geller refused to provide any documentation of the trust unless Warren's heirs agreed to execute a document releasing him from all legal ramifications from the Warren family. Nelson "represented that he wanted nothing further to do with the matter."[18] Plaintiff's attorney was finally able to locate the trust account, but discovered that on October 9, 2010, the funds were removed by wire to Geller's account, and the trust account was closed with a $0.00 balance.[19]

Plaintiff brings causes of action against Genworth, for breach of contract, breach of fiduciary duty, breach of due diligence and failure to conduct due diligence, negligence, fraud, and conversion.[20]

**B. Procedural Background**

Genworth filed the pending motion on November 7, 2012.[21] On November 21, 2012, Plaintiff filed an opposition on November 21, 2012.[22] Upon leave of court, Genworth filed a reply on November 28, 2012.[23] On December 10, 2012, upon leave of court, Plaintiff filed a memorandum

---

[17] *Id.* at ¶ 29.

[18] *Id.* at ¶ 30.

[19] *Id.* at ¶ 32.

[20] *Id.* at ¶¶ 34-39.

[21] Rec. Doc. 101.

[22] Rec. Doc. 127.

[23] Rec. Doc. 142.

in opposition to Genworth's statement of uncontested material facts.[24]

## II. Parties' Arguments

In support of the pending motion, Genworth explains that in 1994 it issued a one million dollar policy insuring the life of Warren, and that the "Frank Warren Irrevocable Life Insurance Trust" was named as the beneficiary. To change the beneficiary, a written request from the owner was required. Genworth claims that no such request was received from Warren prior to Warren's death and payment of the policy.[25] Genworth further explains that after Warren's death, it requested certification from the current trustee, Geller, of the trust; Geller responded and certified the payment, claiming that he was the sole acting trustee. At that point, Genworth paid the policy and placed the funds in a secure access account in the name of the beneficiary-trust.[26] On March 21, 2003, Geller wrote a check to Morgan Keegan, a financial institution, for $1,000,300 from the secure access account to an account with Morgan Keegan in the name of the beneficiary-trust.[27]

According to Genworth, the policy it issued outlined specific procedures necessary to change the beneficiary and/or the owner, which would require a written request by the owner. Initially, the trust was named as the owner and beneficiary. Attached to the application for the policy was an amendment entitled "Ratifications of Changes" dated November 28, 1994, bearing the signature of both Warren and Geller, whereby the owner and beneficiary of the policy was changed to designate Geller, in his capacity as trustee of the trust. Genworth never received a request to change the owner

---

[24] Rec. Doc. 154.

[25] Rec. Doc. 101-1 at p. 2.

[26] *Id.*

[27] *Id.* at pp. 2-3. The additional $300.00 was a refund of a premium paid after Warren's death. *See id.* at p. 2 n. 9.

or beneficiary of the policy.[28] Nelson informed Genworth that Warren died in December of 2002, and upon receiving documentation, Genworth released the funds to the secure access account.[29]

Genworth argues that it is entitled to have the claims against it dismissed because it complied with the terms of the policy and Louisiana law.[30] Genworth contends that it issued only one policy on the life of Warren, and that Plaintiff was neither a party to that contract nor a beneficiary. Following Warren's death, Genworth avers that it merely paid the policy proceeds as per the terms of the policy.

Genworth cites Louisiana Revised Statute § 22:877 that expressly addresses an insurer's duty relative to payment of claims under an insurance policy:

> Whenever the proceeds of, or payments under a life endowment or health and accident insurance policy or any annuity contract issued by a life insurance company become payable and the insurer makes payment thereof in accordance with the terms of the policy or contract or in accordance with any written assignment thereof or of any interest thereunder, hereafter made, the person then designated in the policy or contract or by such assignment as being entitled thereto, shall be entitled to receive such proceeds or payments and to give full acquittance therefor, and such payment shall fully discharge the insurer from all claims under the policy or contract unless, before payment is made, the insurer has received at its home office, written notice by or on behalf of some other person that such other person claims to be entitled to such payment or some interest in the policy or contract. Nothing contained in this Section shall affect any claim or right to any policy or contract or the proceeds thereof or payments thereunder as between persons other than the insurer.

Therefore, Genworth claims that pursuant to this statute, as long as payment is made by an insurer to the person then designated in the policy, and such payment is made before a valid change of beneficiary is received, an insurer's obligations is discharged. Absent written notice of an adverse

---

[28] *Id.* at pp. 4-5.

[29] *Id.*

[30] *Id.* at p. 6.

claim, an "'insurer must be held to have fully discharged its obligation under the insurance contract by making payment to the named beneficiary.'"[31] Here, Genworth contends that it never received notice, either written or oral, prior to payment of the policy, from another claiming entitlement to payment under the policy.

Genworth also directs the Court to the Louisiana Insurance Code, where "an insurer who pays a beneficiary with no insurable interest in the insured and, who , therefore, was not legally entitled to the policy proceeds," is protected by providing that the insured or his executor or administrator may maintain an action to recover benefits from the person who received them.[32] Specifically, Genworth cites Louisiana Revised Statute § 22:901(B):

> If the beneficiary, assignee, or other payee under any contract made in violation of this Section receives from the insurer any benefits under the contract accruing upon the death, disablement, or injury of the individual insured, the individual insured or his executor or administrator, as the case may be, may maintain an action to recover such benefits from the person receiving them.

As such, Genworth argues that from these two statutes "it is clear that Genworth complied with Louisiana law and satisfied its contractual obligation under the Policy in paying the insurance proceeds to the named beneficiary, the Trustee," and that any action should be against Geller, not Genworth.[33]

Moreover, Genworth contends that Plaintiff has failed to state a cause of action against it in the amended petition. First, Genworth addresses Plaintiff's breach of contract claim. Citing authority, Genworth explains that "the written instrument in which a contract of insurance is set

---

[31] *Id.* at p. 7 (quoting *Morein v. N. Am. Co. For Life & Health Ins.*, 271 So.2d 208, 315-16 (La. App. 3 Cir. 1973)).

[32] *Id.* at p. 8.

[33] *Id.*

forth is the policy."[34] Modifications to an insurance contract are only valid if it is made in writing and physically made part of the policy, if it is incorporated in the policy, or if there is other written evidence that it was meant to be added.[35] Genworth notes that Plaintiff was not a party to the contract between Genworth and the trustee, nor any other contract with Genworth. Genworth explains that Plaintiff's breach of contract claim attempts to hold Genworth liable for agreeing to (1) remove Geller as a payee or beneficiary; (2) change the name of the policyholder; (3) remove Geller from all future involvement; and (4) continue the policy as long as premiums were paid, but breached this contract by paying the policy to the "mythical trust." However, Genworth argues that under Louisiana law, strict compliance with the terms of a policy is required, and absent a request for a change in writing, Genworth was bound to adhere to the language in the policy.

Second, Genworth challenges Plaintiff's action in tort against it for paying the policy to the "trust," claiming Genworth was negligent for failing to perform due diligence to discover the trust was invalid as to form.[36] Genworth explains that under Louisiana law, a plaintiff must prove four elements to succeed in an action for tort: (1) duty; (2) breach; (3) cause in fact; and (4) actual damages.[37] Genworth refutes Plaintiff's contention that Genworth had a duty to obtain a copy of the trust and verify its validity under Louisiana law prior to approving payment.

Genworth argues that it did not require, nor did it request, the trust document in order to pay under this policy. Furthermore, it was not Genworth's internal policy to make sure that there was

---

[34] *Id.* at p. 9 (citing La. Rev. Stat. § 22:22:864).

[35] *Id.* (citing La. Rev. Stat. § 22:867; *Hillard v. La. Health Serv. & Indem. Co.*, 411 So.2d 1116, 1120 (La. App. 4 Cir. 1982)).

[36] *Id.* at pp. 11-12.

[37] *Id.* at p. 12 (citing *Harris v. Pizza Hut of La., Inc.*, 455 So.2d 1364, 1369-70 (La. 1984)).

a valid trust. Genworth's internal policy was to request the trust documents or a certification form signed by the trustee certifying that they were the trustee of the trust.[38] This "Designation of Trustee as Owner and/or Beneficiary" form was required for all policies which designated a trust or trustee as a beneficiary or owner. The form stated:

> (1) When a Trustee-Owner exercises ownership rights under a policy when a Trustee-Beneficiary claims benefits under a policy .... ("The Company") will have no obligation to verify that a trust is in effect or that the Trustee is acting within his/her authority; (2) when the Company makes payment to a Trustee, the Company will have no obligation to ensure that the payment is applied according to the terms of the Trust agreement; (3) payment under the policy benefits to a trustee shall release the Company from all obligations under the policy to the extent of the payment.

Therefore, Genworth argues that it "undertook no duty to verify the effectiveness of payment."[39]

Third, Genworth addresses the breach of fiduciary duty claim. In the amended complaint, Plaintiff alleges that "all Defendants had a fiduciary duty to [Warren] and to the heirs and the estate."[40] However, Genworth claims that this statement is not true, and points out that neither Warren's heirs nor estate are a party to this action. Further, Genworth notes that under Louisiana law, an insurer's duty to the insured is contractual in nature and does not give rise to a fiduciary duty.[41] Therefore, Genworth asserts that this cause of action should be summarily dismissed.

Fourth, Genworth challenges Plaintiff's cause of action for fraud. Genworth outlines a plaintiff's burden to succeed on a cause of action for fraud: (1) a misrepresentation of material fact; (2) that was made with the intent to deceive: and (3) caused justifiable reliance with resultant

---

[38] *Id.*, n. 39.

[39] *Id.* at pp. 12-13.

[40] Rec. Doc. 57 at ¶ 35.

[41] Rec. Doc. 101-1 at p. 13 (citing *Nat'l Union Fire Ins. Co. v. Cagle*, 68 F.3d 905, 910 (5th Cir. 1995)).

injury.[42] Genworth maintains that while the amended complaint alleges that Geller and Nelson made misrepresentations, these actions cannot be imputed to Genworth.

Geller was a sports agent, with no connection to Genworth. Genworth avers that Nelson was merely a "Solicitor" for Genworth, not an employee, and was even identified by Plaintiff as her husband's insurance agent.[43] Further, Genworth claims that Warren signed a form acknowledging that any representation made by Nelson regarding the trust was not authorized by Genworth.[44] As such, Genworth argues that there is nothing to bind Genworth to any alleged fraud.

Fifth, Genworth similarly claims that Plaintiff's cause of action for conversion, alleging that Geller used up the funds of the trust for his own personal benefit, cannot be imputed to Genworth. Genworth argues that Plaintiff does not allege that Genworth or Nelson converted any funds, and absent a conspiracy, which Plaintiff cannot prove, there is no cause of action for conversion.[45]

Sixth, Genworth refutes Plaintiff's assertion that all Defendants are "joint tortfeasors" and therefore each one's actions are imputed on the others. While Genworth denies that it is responsible to Plaintiff in tort, as discussed above, it also argues that under Louisiana law it cannot be considered a joint tortfeasor. Genworth cites Louisiana Civil Code Article 2324, which states:

A. He who **conspires with another** person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.

B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be

---

[42] *Id.* at p. 14 (citing *Newport Ltd. v. Sears Roebeck & Co.*, 6 F.3d 1058, 1068 (5th Cir. 1993)).

[43] *Id.*

[44] *Id.* (citing Ex, F-2).

[45] *Id.* at p. 15.

> solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.[46]

As such, Genworth argues that a joint tortfeasor is only liable for its degree of fault unless it conspired with another to commit an intentional or willful act, and to prove this there must be evidence of some agreement to commit an illegal or tortious act.[47]

Here, Genworth claims that the only intentional tort alleged is the "conversion" of $1,000,000 in policy proceeds which Genworth deposited into a secure access account in the name of the policy beneficiary. However, Plaintiff further alleges that Geller converted the funds "with directions and participation of co-tortfeasors, Nelson and [Genworth]." Genworth denies this allegation and claims that after it deposited the money in the secure access account, it had no further contact with Geller. Further, Genworth argues that under Louisiana Revised Statute § 22:997, if payment was made to the wrong person, then Warren's estate must pursue a cause of action against Geller.[48]

In addition, Genworth argues that Plaintiff's claims against it have prescribed. Genworth paid the policy funds on or about March 11, 2003, and as a delictual action, there is a one-year prescriptive period that begins to run once the damage is sustained.[49] Here, suit was not filed until September 12, 2011, and therefore, Genworth argues that prescription had run.[50]

---

[46] *Id.* (emphasis in Genworth's memorandum).

[47] *Id.* at p. 16.

[48] *Id.* at p. 17.

[49] *Id.* at pp. 17-18 (citing La. Civ. Code art. 3492).

[50] *Id.* at p. 18.

12

In opposition to the pending motion, Plaintiff explains that through discovery she has become aware that there were two notarized contemplated trusts that Plaintiff sent to Nelson to be submitted to Genworth. However, the documents were never submitted to Genworth.[51] Plaintiff claims that Nelson, in "a remarkable illegal act," altered both documents, thereby voiding them. To refute the pending motion, Plaintiff argues that in its corporate deposition, Genworth admitted it had never seen the alleged trust documents, and therefore relied solely on the representations of "its agent" Nelson.[52]

Based on these assertions, Plaintiff claims that there never was a trust, and as such, the funds should have been paid to Warren's heirs instead of Geller, as trustee of the alleged non-existant trust.[53] Therefore, Plaintiff argues that the policy should be reformed, and that Nelson's actions are imputed on his employer, Genworth, thereby making it liable.

Concerning breach of contract, Plaintiff states that "Plaintiffs' [sic] have not met their burden of proof, regarding this issue." The Court assumes that this was a mistake and Plaintiff meant to say that defendant Genworth has not met its burden. Plaintiff maintains that if not for the "false witnessing" of Nelson, the Warren family would have received the funds. Plaintiff attempts to hold Genworth liable for "its agent" Nelson's actions as well as its own "failure of due diligence" to inspect the trust documents.[54] Plaintiff cites no authority for the imputation of liability on Genworth. Plaintiff claims that Genworth owed a contractual duty to both Warren and his family to "protect

---

[51] Rec. Doc. 127 at p. 2.

[52] *Id.* at p. 3.

[53] *Id.* at p. 19.

[54] *Id.* at p. 20.

the insured's monies." Again, Plaintiff cites no authority in support.[55]

In connection to the tort claim, Plaintiff argues that the case law cited by Genworth regarding the four elements to prove joint tortfeasors sets out a trial standard, not a standard for summary judgment. Therefore, Plaintiff claims this cause of action may not be dismissed upon the pending motion.[56] Plaintiff opines, without citing any law or evidence from the record that, "Perhaps, Defendant, Nelson was afraid of the discovery of illegally tampering with notarized documents, or perhaps, Defendant, Genworth was presented with both Trust documents, and backed off the Trust issue, after discovering the illegal actions, tampering and false witnessing of Defendant, Nelson, who was Defendant, Genworth's agent at the time. A jury will have to decide."[57]

In addressing the allegation of fraud, Plaintiff argues that it is "incredible" for Genworth to argue that it did not make any misrepresentation, with the intent to deceive and causing justifiable reliance "after it allowed its agent to tamper with and alter two (2) not one (1) notarized proposed Trust documents, then allow the agent to falsely witness numerous documents, some of which may contain forgeries. Defendant, Genworth knew or should have known Defendant, Nelson did not witness anything, not a single document, as Defendant, Nelson, lives in Washington State."[58]

Regarding the conversion claim, Plaintiff states, again without citing to any authority or the evidence in the record, "We are dealing with a joint tort feasor issue. Defendant Nelson, who was an agent for Defendant, Genworth [sic]. Defendant, Geller, and Defendant, Nelson have a game

---

[55] *Id.*

[56] *Id.* at pp. 20-21.

[57] *Id.* at p. 21.

[58] *Id.* at p. 22.

going. Fraud is glaring. Defendant, Genworth is principal to the conversion of the $1,000,000.00 to Defendant, Geller."[59] In addressing the issue of joint tortfeasors, Plaintiff claims that "Defendant, Genworth, ratifies the actions of its agent Defendant, Nelson. Defendant Genworth had to have known there were two (2) altered Trust documents. Defendant, Genworth is joined at the hip with Defendant, Nelson. Defendant, Nelson and Defendant, Geller, are joined at the hip by the facts shown hereinabove."[60] Plaintiff argues that all actions of Nelson are imputed on Genworth.

Finally, regarding Genworth's prescription argument, Plaintiff argues that "[f]raud, if proven, veto's [sic] prescription."[61] Plaintiff argues that it was only after discovery was conducted in this case that she discovered the altered trust documents. Again, Plaintiff has failed to cite any case law or authority, and simply states that "*Contra Non Valentum Apre Nulla Currit Praescripto*, is apparent," without any further explanation.[62]

In reply, Genworth argues that "Plaintiff's Opposition consists merely of argument, unsupported by fact or law," while it maintains that Genworth's facts are supported by evidence in the record.[63] Therefore, Genworth claims there are no genuine issues of material fact, and the pending motion should be granted.

In Plaintiff's opposition to Genworth's statement of uncontested facts, Plaintiff opposes all claims regarding the trust, arguing that there was never a valid trust.[64] In connection to the

---

[59] *Id.* at pp. 22-23.

[60] *Id.* at p. 23.

[61] *Id.*

[62] *Id.*

[63] Rec. Doc. 142 at p. 2.

[64] Rec. Doc. 154.

"Ratification of Changes," dated November 28, 1994, Plaintiff claims, without citing to anything in the record that the document "has been shown to be invalid," mainly because it was "falsely witnessed" by Nelson and that the signature of Warren in "most probably a forgery."[65]

### III. Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[66] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence but refrains from making credibility determinations or weighing the evidence."[67] All reasonable inferences are drawn in favor of the nonmoving party, but "'conclusory allegations supported by a conclusory affidavit will not suffice to require a trial.' This is true even if the movant cannot demonstrate contrary facts by specific affidavit recitation to rebut the conclusory affidavit."[68] If the record, as a whole, could not lead a rational trier of fact to find for the nonmoving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[69]

Because factual disputes may not be resolved on summary judgment, a plaintiff need not offer all of its evidence, but rather only enough so that a jury *might* return a verdict in its favor.[70] If

---

[65] *Id.* at pp. 2-3.

[66] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[67] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[68]  *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993) (quoting *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir. 1986)).

[69] *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147-48 (5th Cir. 1992).

[70] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir. 1991).

the nonmovant would bear the burden of proof at trial on a claim, the movant may simply point to the absence of evidence, which then returns the burden on the motion for summary judgment to the nonmovant.[71] Then, the nonmovant must point to competent evidence that there is an issue of material fact so as to warrant trial.[72] To defeat summary judgment, the nonmovant must direct the court's attention to specific evidence in the record to establish an issue of material fact as to each claim upon which it will bear the burden of proof at trial.[73] "The opponent must meet the movant's affidavits with opposing affidavits that set out specific facts showing an issue for trial."[74]

## IV. Law and Analysis

### A. Breach of Contract

Under Louisiana law, a breach of contract claim requires the plaintiff to prove: (1) the obligor's undertaking of an obligation to perform; (2) that the obligor failed to perform the obligation (i.e. breach); and (3) that the breach resulted in damages to the obligee.[75] An obligation, or contract, is defined in the Louisiana Civil Code as "a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another."[76] "A contract is formed by consent of the parties established through offer and acceptance."[77] In order to create a binding

---

[71] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (per curiam).

[72] *Id.*

[73] *Rizzo v. Children's World Learning Ctrs.*, 84 F.3d 758, 762 (5th Cir. 1996).

[74] *Travelers,* 7 F.3d at 1206-07.

[75] *Favrot v. Favrot*, 2010-0986 (La. App. 4 Cir. 2/9/11); 68 So.3d 1099, 1108-09.

[76] La. C.C. art. 1756.

[77] La. C.C. art. 1927.

obligation, both parties must agree to the substantial elements of the contract.[78]

Here, Plaintiff has not identified any binding agreement made between Genworth and Plaintiff, which is a necessary element to establish a cause of action for breach of contact. As Genworth has also pointed out, Plaintiff was not even a named beneficiary to the contract Genworth entered into to insure the life of Warren. Even if the alleged changes were made, Plaintiff would not have been the beneficiary of the policy. Therefore, it is undeniable that the life insurance policy at issue here cannot provide the basis upon which Plaintiff now pursues a cause of action for breach of contract.

Instead, in the amended complaint, Plaintiff argues that Genworth breached a tangential unwritten contract where it agreed to (1) remove Geller as payee or beneficiary; (2) change the name of the policyholder; (3) remove Geller from all involvement in the trust; and (4) keep the policy in effect as long as premiums were paid. Genworth has maintained that there is no "proof at all" for the existence of this alleged contract.[79] Plaintiff alleges that Warren, now deceased, had this conversation with Genworth. From the Plaintiff's pleadings, it is not clear if Plaintiff has direct knowledge of this alleged "contract," but it appears doubtful considering Plaintiff points to no evidence to substantiate it. As noted earlier, a movant may succeed on a motion for summary judgment by pointing to the absence of evidence on an issue that the nonmovant would carry the burden on at trial. It is then the nonmovant's burden to direct the Court to reliable evidence in the record. All Plaintiff has pointed to is deposition testimony that it was Frank Warren's money that paid the premiums. This is insufficient to support a claim that there was a binding contract, formed

---

[78] La. C.C. arts. 1779 and 1798.

[79] Rec. Doc. 101-1 at pp. 9-10.

through offer and acceptance, between Plaintiff, Terrell Warren, and Genworth. Therefore, Plaintiff has failed to point to any evidence in the record to defeat the motion for summary judgment on this issue.

### B. Tort

Plaintiff has claimed that Genworth was negligent for paying the policy benefits to a trust, without first verifying the validity of the trust, and therefore is liable in tort. As Genworth previously noted, to establish a cause of action for tort in Louisiana, a plaintiff must show (1) a duty; (2) breach of that duty; (3) cause in fact: and (5) actual damages. The gist of Genworth's argument is that it was not its policy to require or request a copy of the trust document, but instead it would accept a form from the trustee certifying the trust; additionally, Genworth argues that Warren signed a document that alleviated Genworth of any responsibility it had to ensure that the trust was in effect.[80]

However, regardless of what Genworth's policy was, this does not answer the question of whether Genworth had a duty to make sure the trust was valid before disbursing funds. Whether a duty is owed is a question of law.[81] The parties have not briefed this issue of law. However, Genworth has identified in the record a document signed by Warren, which states:

> (1) When a Trustee-Owner exercises ownership rights under a policy or when a Trustee-Beneficiary claims benefits under a policy .... ("The Company") will have no obligation to verify that a trust is in effect or that the Trustee is acting within his/her authority; (2) when the Company makes payment to a Trustee, the Company will have no obligation to ensure that the payment is applied according to the terms of the Trust agreement; (3) payment under the policy benefits to a trustee shall release the Company from all obligations under the policy to the extent of the payment.[82]

---

[80] *See id.* at pp. 12-13.

[81] *Mundy v. Dept. of Health & Human Res.*, 620 So.2d 811, 813 (La. 1993).

[82] Rec. Doc. 101-10 at p. 32.

As such, Genworth argues that Warren consented to Genworth not being responsible for verifying that the trust was valid before paying on the policy or ensuring that Geller acted within the scope of his authority as trustee. In response, Plaintiff has alleged, without citing any evidence that "[t]he signature of Frank Warren is most probably a forgery."[83] As this Court noted earlier, such conclusory allegations, unsupported by evidence will not suffice to defeat summary judgment. Here, Plaintiff merely opines that the signature is "probably" a forgery, but does not claim to know. However, as will be addressed later,[84] Plaintiff has stated a claim that Genworth may be liable for the alleged fraud of Nelson, who was the "Solicitor" that arranged for the parties to come together to execute the life insurance policy. As such, there remains a reasonable dispute of material fact, aside from the authenticity of Frank Warren's signature, of whether the above-mentioned document is enforceable under the circumstances. Therefore, this claim cannot be dismissed upon summary judgment.

### C. Breach of Fiduciary Duty

Plaintiff made no arguments opposing Genworth's motion for summary judgment for the breach of fiduciary duty claim against Genworth. Genworth has argued that an insurer's duty to the insured is contractual in nature and does not give rise to a fiduciary duty. Specifically, Genworth has cited *National Union Fire Insurance Co. v. Cagle*,[85] where after reviewing Louisiana case law, the United States Court of Appeals for the Fifth Circuit determined that "no fiduciary relationship is

---

[83] Rec. Doc. 154 at p. 2.

[84] *See infra* Part IV.D.

[85] 68 F.3d at 905.

established by an insurance contract."[86] As Plaintiff has failed to distinguish this case or argue an alternative theory for the creation of a fiduciary duty, the Court will dismiss Plaintiff's claim against Genworth for breach of fiduciary duty.

**D. Fraud**

Genworth contends that Plaintiff's cause of action for fraud must fail, because she cannot point to any evidence in the record to support (1) a misrepresentation of a material fact; (2) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury. Plaintiff attempts to impute all alleged fraud of Nelson – mainly "false witnessing" of documents – to Genworth because Geller was its insurance agent. Genworth has argued that "Nelson worked for himself" and was merely a "Solicitor" for Genworth.[87]

Even if Geller was merely a "Solicitor" for Genworth, that does not end the inquiry. A "solicitor" is merely a person who must be "licensed under the laws of this state to sell, solicit, or negotiate insurance."[88] In *Tiner v. Aetna Life Insurance Co.*,[89] defendant-insurance company claimed that "it cannot be bound by the acts of [the solicitor] in the present instance, because [the solicitor] was a broker who could place insurance with any company he wanted, rather than an agent of [the defendant] 'authorized in writing' to act as its representative." The Louisiana Supreme Court rejected this argument and stated that "the Louisiana insurance statutes do not prohibit the courts from finding the legal relationship of principal-agent exists, so as to bind the insurer, despite the

---

[86] *Id.* at 910.

[87] *Id.* at p. 14.

[88] La. Rev. Stat. § 22:1542.

[89] 291 So.2d 774, 777 (La. 1974).

failure [of] the person acting for the insurer to have been specifically licensed as its agent. This is the general rule in other jurisdictions also, where a broker may be found under the facts to have been an agent of the insurer for the purpose involved." Therefore, this Court cannot say as a matter of law or undisputed fact that Genworth is not responsible for any alleged misrepresentations made on the part of Nelson, and will thus deny summary judgment on this issue.

### E. Conversion and Joint Tortfeasors

Genworth argues that Plaintiff has not alleged, nor can she prove, that Nelson or Genworth converted funds. The main allegation relevant to this claim is that Geller converted the policy funds. As such, the only way Genworth could be held liable for the intentional act of another under Louisiana law is if it was a "joint tortfeasor," which would require a showing of conspiracy.[90] In the absence of this, each defendant is only liable for their divisible obligation.[91]

"To establish a conspiracy, a plaintiff is required to provide evidence of the requisite agreement between the parties. Stated otherwise, the plaintiff is required to establish a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing."[92] Genworth maintains that after it placed the funds in the secure access account, it had no further contact with Geller, and therefore there is no evidence of Genworth committing conversion or collusion to commit conversion.[93] In response, Plaintiff simply makes the conclusory statement that "Defendant Nelson, who was an agent for Defendant, Genworth [sic]. Defendant, Geller and Defendant, Nelson

---

[90] *See* Rec. Doc. 101-1 at p. 15.

[91] La. Civ. Code art. 2324.

[92] *Thomas v. N. 40 Land Dev., Inc.*, 04-0610 (La. App. 4 Cir. 1/26/05); 894 So.2d 1160, 1174.

[93] *See* Rec. Doc. 101-1 at pp. 16-17.

have a game going. Fraud is glaring. Defendant is principal to the conversion of the $1,000,000.00 to Defendant, Geller."[94] As stated earlier, a nonmovant may not defeat summary judgment with conclusory allegations not supported by specific evidence in the record.[95] Plaintiff's unsupported allegations fail to meet this burden, and therefore Plaintiff's request to consider Genworth a joint tortfeasor and its claim of conversion against Genworth are dismissed.

### F. Prescription

As a final argument for summary judgment, Genworth avers that all of Plaintiff's claims have prescribed. A delictual obligation arises from the "intentional or negligent causing of damages" to another in the absence of a contract.[96] The parties do not dispute that the allegations relevant to Plaintiff's claims against Genworth are considered delictual. Louisiana Code of Civil Procedure article 3492 governs delictual actions and states: "Delictual actions are subject to a liberative prescription of one year. Prescription commences to run from the day injury or damage is sustained." When an action is filed more than a year after the alleged incident, the cause of action has prescribed on its face and "the plaintiff carries the burden of proving that prescription was interrupted, suspended or renounced."[97]

It is undisputed that Genworth paid the policy to the secure access account in 2003. Therefore, when this cause of action was filed on September 12, 2011, more than a year had lapsed. As such, Plaintiff bears the burden to prove that prescription does not bar her claims. In an attempt

---

[94] Rec. Doc. 127 at pp. 22-23.

[95] *See Travelers*, 7 F.3d at 1207.

[96] *Hostetler v. Gary & Co., Inc.*, 523 So.2d 1359, 1368 (La. App. 2 Cir. 1988).

[97] *Gary v. Camden Fire Ins. Co.*, 96-0055 (La. 7/2/96); 676 So.2d 553, 555.

to meet this burden, Plaintiff does not cite any authority, but merely makes the legal conclusion that "fraud, if proven, veto's [sic] prescription."[98] Plaintiff also invokes *contra non valentum* to avoid prescription, without providing any detailed rationale as to why this doctrine applies to this matter. This doctrine applies under four scenarios:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> (2) where there was some condition coupled with a contract or connected with the proceedings which prevented the [plaintiff] from suing or acting;
>
> (3) where the [defendant] himself has done some act effectually to prevent the [plaintiff] from availing himself of his cause of action;
>
> (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.[99]

Plaintiff argues that her causes of action "were not discovered until Plaintiffs [sic] counsel threatened to go to the FBI, if Defendant, Geller did not produce documents."[100] Making all reasonable assumptions in favor of Plaintiff, which a court must do on a motion for summary judgment, Plaintiff has articulated a plausible theory, supported by the record, in support of the application of *contra non valntum* to prevent prescription. Therefore, the Court will not dismiss Plaintiff's claims as prescribed.

## V. Conclusion

For the reasons stated above, Genworth has demonstrated that it is entitled to summary judgment dismissing Plaintiff's claims for breach of contract, breach of fiduciary duty, conversion,

---

[98] Rec. Doc. 127 at p. 23.

[99] *Rajnowski v. St. Patrick's Hosp.*, 564 So.2d 671, 674 (La. 1990).

[100] Rec. Doc. 127 at p. 23.

and a finding that Genworth is joint tortfeasor with Geller or Nelson. However, the Court will deny Genworth's motion with regard to the claims for tort and fraud. Moreover, based on Plaintiff's allegations, the Court finds that the doctrine of *contra non valentum* may apply and therefore will not dismiss Plaintiff's claims on the basis of prescription. Accordingly,

**IT IS HEREBY ORDERED** that Genworth's Motion for Summary Judgment[101] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Genworth for breach of contract, breach of fiduciary duty, conversion, and a finding that Genworth is a joint tortfeasor are **DISMISSED**;

**IT IS FURTHER ORDERED** that the pending motion is **DENIED** with regard to Plaintiff's claims against Genworth for tort and fraud.

**NEW ORLEANS, LOUISIANA**, this   14th   day of February, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[101] Rec. Doc. 101.