## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRELL LEBEAUX WARREN** | **CIVIL NO. 11-2282** |
| **VERSUS** | |
| **BENJAMIN GELLER, ET AL.** | **SECTION: "G" (1)** |

### ORDER AND REASONS

Before the Court is the United States' Motion to Intervene and Stay Civil Proceedings.[1] Defendant Arlyn Nelson ("Nelson") opposes the pending motion. Plaintiff Terrell LeBeaux Warren ("Plaintiff") takes no position on this motion, and all other parties do not object to the relief sought by the United States.[2] After considering the motion, the memorandum in support, the opposition, the reply, the surreply, the record, and the applicable law, the Court will grant the pending motion and stay this proceeding in for sixty (60) days from the date of this order.

### I. Background

#### A. Factual Background

This Court has previously outlined in detail the allegations of Plaintiff in the complaint.[3] The issues in the pending motion do not warrant repetition of those allegations here. In short, Plaintiff is the widow of Frank Warren ("Warren"). Prior to Warren's death, his agent Benjamin Geller ("Geller") offered to create an irrevocable trust for Warren, and with the help of Nelson, an insurance agent, the trust would be the beneficiary of a life insurance policy. When Warren died, his family received

---

[1] Rec. Doc. 277.

[2] *Id.* at p. 1

[3] Rec. Doc. 270 at pp. 2-5.

payments, purportedly from the trust, for a period of time. However, it was later discovered that a substantial portion of the $1,000,000 life insurance policy proceeds were unaccounted for and not available to Plaintiff. Plaintiff has accused the defendants, including Geller, of fraud and negligence in the formation of an alleged trust and in failure to properly pay the policy proceeds. Plaintiff has specifically alleged that Geller stole trust funds for his own personal benefit.

**B. Procedural Background**

Plaintiff filed the complaint in this action on September 12, 2011.[4] On March 5, 2013, the United States filed the pending motion to intervene and stay this proceeding.[5] On March 19, 2013, Nelson filed an opposition.[6] With leave of court, the United States filed a reply on March 25, 2013.[7] In response, Nelson filed a surreply on March 28, 2013.[8]

## II. Parties' Arguments

In support of the pending motion, the United States explains that Geller is the subject of a grand jury's federal criminal investigation "involving the exact set of facts, circumstances, witnesses, and evidence relating to this civil suit."[9] The United States avers that "permitting this case to continue into discovery, summary judgment, and trial will operate to irreparably harm the Grand Jury's investigation," and therefore this matter should be stayed.[10]

---

[4] Rec. Doc. 1.

[5] Rec. Doc. 277.

[6] Rec. Doc. 285.

[7] Rec. Doc. 293.

[8] Rec. Doc. 298.

[9] Rec. Doc. 277-1 at p. 2.

[10] *Id.* at p. 5.

The United States argues that pursuant to Federal Rule of Civil Procedure 24(b), an applicant may intervene with leave of court when the applicant "has a claim or defense that shares with the main action a common question of law or fact." The United States notes that federal courts have allowed the government to intervene in civil actions, especially for the limited purpose of moving to stay a civil proceeding.[11] The United States cites *Campbell v. Eastland*,[12] where the Fifth Circuit set out guidelines for district courts to follow when deciding whether to stay a civil proceeding pending the result of an ongoing criminal investigation of prosecution:

> There is a clearcut distinction between private interests in civil litigation and the public interest in a criminal prosecution, between a civil trial and a criminal trial, and between the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure. but these distinctions do not mean that a civil action and a criminal action involving the same parties and some of the same issues are so unrelated that in determining good cause for discovery in the civil suit, a determination that requires the weighing of effects, the trial judge in the civil proceeding should ignore the effect discovery would have on a criminal proceeding that is pending or just about to be brought. The very fact that there is clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.[13]

The United States argues that the *Campbell* court advised district courts to remember the differences and policy objectives in civil and criminal discovery; specifically, the Fifth Circuit cautioned that criminal defendants should not be able to benefit from the more liberal discovery available in civil matters.[14]

---

[11] *Id.* (citing *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970)).

[12] 307 F.2d 478 (5th Cir. 1962).

[13] *Id.* at 487.

[14] Rec. Doc. 277-1 at p. 7.

The United States also argues that allowing this civil action to proceed may injure some of the civil parties, because Geller may invoke his Fifth Amendment rights during discovery in this matter.[15] Further, the United States notes that district courts within the Fifth Circuit have recognized several factors in considering whether to stay a civil proceeding: "(1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether defendants have been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of the burden on the defendants; (5) the interests of the courts; and (6) the public interest."[16]

Concerning the first factor, the United States acknowledges that the similarities in the facts and issues between the civil and the criminal matter is the most important factor in determining whether to grant a stay.[17] The United States contends that "[h]ere, there is a common nucleus of operative facts in both the civil and criminal matters."[18] Attached to the pending motion, the United States has appended the declaration of FBI Special Agent Orvin, who states that the parties, witnesses, evidence, and operative facts are nearly identical in the two parallel proceedings.[19]

In regard to the second factor, the United States argues that while an indictment of Geller has not been issued, the "investigation into potential criminal violations has been ongoing and is still an

---

[15] *Id.* at pp. 7-8.

[16] *Id.* at pp. 8-9 (citing *Heller Healthcare Fin., Inc. v. Boyes*, No. 300-1335, 2002 WL 1558337, at * 2 (N.D. Tex. July 15, 2002)).

[17] *Id.* at p. 9 (citing *Waste Mgmt. of La., LLC, v. River Birch, Inc.*, No. 11-2405, 2012 WL 520660, at * 4 (E.D. La. Feb. 15, 2012) (Brown, J.)).

[18] *Id.* at p. 10.

[19] Rec. Doc. 277-2.

active investigation."[20] The United States notes that the fact that a criminal investigation is ongoing does not foreclose the availability of a stay in the civil matter.[21] Moreover, "the applicability of the Speedy Trial Act guarantees that the criminal trial will occur quickly after indictment."[22]

In connection with the third factor, the United States avers that no party will suffer substantial prejudice based on a delay of the civil proceeding.[23] The United States explains that Plaintiff may be a victim in the criminal proceedings and therefore entitled to restitution under 18 U.S.C. §§ 3663, 3663A. Further, the United States maintains that Plaintiff may actually benefit from the stay because she would have the benefit of the information gathered during the criminal investigation.

Next, the United States avers that the interests of the defendants would be served by the stay, because any defendant who has criminal exposure would be able to address criminal liability first, prior to any civil liability.[24] Additionally, the United States argues that some defendants in the civil proceeding may be prejudiced in their ability to prepare a defense if a stay is not granted because other witnesses, such as Geller, may invoke their Fifth Amendment rights.[25]

In addressing the fifth and sixth factors, the United States argues that as the role of the prosecutor is to serve both private victims and the general public, the criminal case is entitled to precedence over the civil litigation.[26] Finally, concerning the sixth factor, the United States avers that

---

[20] Rec. Doc. 227-1 at p. 11.

[21] *Id.* (citing *Wehling v. CBS*, 608 F.2d 1084, 1089 (5th Cir. 1979)).

[22] *Id.*

[23] *Id.* at p. 12.

[24] *Id.*

[25] *Id.*

[26] *Id.* at p. 13 (citing *In re Ivan F. Boesky Sec. Litig.*, 128 F.R.D. 47, 49 (S.D.N.Y. 1989)).

the interests of judicial economy counsel in favor of a stay in the civil proceeding pending the outcome of the ongoing criminal matter, because the criminal matter may streamline the civil litigation by eliminating certain evidentiary issues.[27]

In opposition, Nelson claims that the United States has failed to provide support for its claim that it has a right to intervene in this action.[28] Geller takes issue with the United States claim that courts have regularly allowed the government to intervene in civil proceedings to stay discovery in light of a criminal investigation, by simply "includ[ing] a string of citations."[29] Further, Geller argues that under Federal Rule of Civil Procedure 24(c), an intervener must state in its motion "the grounds for intervention" and the "claim or defense for which intervention is sought." Geller avers that the pending motion should be denied for the United States' failure to abide by the pleading requirements.[30]

Additionally, Nelson argues that the United States' motion is untimely under Rule 24(a)(2) or (b)(1). Nelson explains that under Fifth Circuit precedent, timeliness is determined from all of the circumstances,[31] and four factors are considered relevant: (1) the length of time during which the would-be intervener actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervener's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case; (3) the extent of the prejudice that the would-be intervener may suffer if his petition for leave to intervene is denied; (4) and

---

[27] *Id.* at p. 14 (citing *Waste Management*, 2012 WL 520660, at * 5).

[28] Rec. Doc. 285 at p. 1.

[29] *Id.* at p. 5.

[30] *Id.*

[31] *Id.* (citing *Lucas v. McKeithen*, 102 F.3d 171, 173 (5th Cir. 1996)).

(4) the existence of unusual circumstances militating either for or against a determination that the application is timely.[32]

In consideration of these factors, Nelson contends that "[i]t is undisputed that the Government knew of plaintiff's civil and criminal claims against Geller before the civil lawsuit was ever filed. It is further undisputed that the Government began its former criminal investigation as early as July 22, 2011."[33] Despite this, Nelson argues the United States waited until March 5, 2013 to request a stay, after much of the discovery in this matter had been completed.[34] Next, Nelson argues that because the United States knew of their interest in this dispute since the summer of 2011, this factor weighs heavily in favor of denying the pending motion.

In consideration of the prejudice the parties will suffer by a stay, Nelson argues that had the Government intervened back in 2011, "the parties would not have spent significant sums on discovery, motion practice, and preparing the case for trial."[35]  Nelson also argues that a stay would now force the parties to incur additional attorney's fees to "re-prepare the case for trial," and that Nelson will be especially prejudiced because "the plaintiff's claim of fraud will continue to linger for an indefinite period causing further damage to his personal and professional reputation."[36]

Alternatively, Nelson maintains that the United States will not be prejudiced by the denial of the pending motion. Nelson argues that the pending motion fails to point to any discovery that it claims

---

[32] *Id.* (citing *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (en banc) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 247, 264-66 (5th Cir. 1977))).

[33] *Id.* at p. 6 (citing Rec. Doc. 284-1, Subpoena for GE Life & Annuity to Testify Before Grand Jury).

[34] *Id.*

[35] *Id.* at pp. 6-7.

[36] *Id.* at p. 7.

would prejudice the criminal prosecution. Moreover, Nelson claims that this action has been pending since September 2011, and all parties have already engaged in substantial written and deposition discovery.[37] Nelson also argues that the United States has not provided any "unusual circumstances" to justify it waiting so long to request the stay in this matter.

Nelson explains that the issuance of a stay in a civil proceeding is an extraordinary remedy that should not be granted lightly.[38] Nelson also argues that "[t]he criminal investigation is in its infancy and no indictment has been issued. The requested stay, therefore, necessarily is for an undetermined time period, dependant on the speediness of the investigation and any subsequent indictment (i.e., all at the mercy of the Government)."[39]

Finally, Nelson argues that the three reasons given by the United States as to why a stay is necessary to avoid substantial and irreparable harm are not implicated under these circumstances. First, Nelson argues that the United States has not pointed to any specific discovery that would provide Geller a procedural advantage in the criminal proceeding, because much of the discovery in this matter has already been completed.[40] Next, Nelson points out that only Geller is the subject of a criminal investigation, and during his deposition he never invoked his Fifth Amendment rights. Therefore, Nelson contends that no party would be prejudiced if a stay was not granted. Finally, Nelson avers that "this case does not involve a situation where a criminal defendant has filed a civil action to gain a procedural advantage in the criminal action," and notes that the criminal target, Geller, does not object to the issuance of the stay requested by the United States, and therefore is not attempting to use this

---

[37] *Id.*

[38] *Id.* at p. 8 (citing *United States v. Simcho*, 326 F. App'x 791, 792 (5th Cir. 2009)).

[39] *Id.* at pp. 8-9.

[40] *Id.* at pp. 9-10.

civil action's more liberal discovery to benefit him in the potential criminal action.[41] Therefore, Nelson argues that "a denial of the stay will not set 'dangerous precedent' or prejudice the Government in any way."[42]

In reply, the United States argues that its intervention is both proper and timely.[43] The United states quotes the Second Circuit, which stated that "[t]he government ha[s] a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter."[44] The United States claims that it is entitled to intervene based on Rule 24(a) because it has an interest "relating to the property or transaction that is the subject" of this case. The United States also claims that it may intervene under Rule 24(b) because the United States "has a claim or defense that shares with the main action a common question of law or fact."[45] Therefore, the United States argues that it is entitled to intervene as a matter of right under Rule 24(a), or that a permissive intervention is appropriate under Rule 24(b).[46] The United States also notes that other courts have found intervention to be appropriate where, like here, criminal charges are "anticipated, but have not yet been filed.[47]

Regarding timeliness, the United States claims that Nelson's assertions on when the criminal investigation began and "when the Government's interests would have been first affected by this case"

---

[41] *Id.* at p. 10.

[42] *Id.* at p. 11.

[43] Rec. Doc. 293 at p. 3.

[44] *Id.* (quoting *SEC v. Chestman*, 861 F.2d 49 (2d Cir. 1988)).

[45] *Id.* at p. 4 (internal quotation marks omitted).

[46] *Id.*

[47] *Id.* n. 1 (citing *In re Air Cargo Shipping Servs.*, No. 06-1775, 2010 WL 5027536, at *1 (E.D.N.Y. Dec. 3, 2010)).

are "speculative."[48] Further, the United States notes that the requirement of timeliness is not meant to act as a punishment for a tardy intervener, but rather as a mechanism to guard against prejudice to the original parties for the would-be intervener's failure to apply sooner.[49] The United States also notes that the Fifth Circuit has instructed lower courts to discourage premature intervention.[50]

Specifically, the United States claims that the 2011 subpoena cited by Nelson does not indicate the initiation of a formal criminal investigation into Geller. The United States argues that the 2011 subpoena "called for records from a life insurance company relating to Frank Warren's life insurance policy," and "did not request records reflecting the expenditure of Warren's trust funds, nor did it request records relating to communications between the plaintiff and anyone else relevant here, including the trustee, defendant Geller, both of which are matters at the heart of the grand jury investigation here."[51] Therefore, the United States argues that the 2011 subpoena does not "by itself, put the Government on notice as to its interest in this case," and "did not [] yield all the facts currently known by the Government."[52] The United States also cites Fifth Circuit precedent where the court allowed intervention in an environmental suit that had been pending for eight years after it became apparent to the applicant that its interests were affected.[53]

In addition, the United States avers that even if it should have known of its interest to intervene in this matter in 2011, Nelson cannot demonstrate "any real prejudice to him by the Government's

---

[48] *Id.*

[49] *Id.* (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

[50] *Id.* at p. 5 (citing *Espy*, 18 F.3d at 1206).

[51] *Id.*

[52] *Id.*

[53] *Id.* (citing *Espy*, 18 F.3d at 1205-06).

10

request here."[54] First, the United States notes that Nelson complains that if the United States had intervened sooner, he and the other parties would not have spent significant sums of money on discovery, motions practice, and preparing the case for trial. The United States argues that this argument is "of no moment," because these sums would have been expended eventually.[55] Second, the United States takes issue with Nelson's complaint that further delay of this action will allow the accusations against him to "linger" and further damage his personal reputation. The United States argues that this is disingenuous because Nelson did not object to Plaintiff's most recent amended complaint and continuation of the trial date.[56] Further, the United States notes that the Fifth Circuit has stated that "prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervener to participate in the litigation."[57]

Additionally, the United States claims that Nelson has failed to address the six factors governing this analysis, and reiterates its contention that all six "overwhelmingly counsel in favor the Government's request here."[58]

Next, the United States maintains that if this action is allowed to proceed, "the grand jury's investigation will be irreparably damages."[59] "For example, if this case were to proceed to trial, some of the litigants might be forced to choose between asserting their Fifth Amendment rights to protect

---

[54] *Id.*

[55] *Id.* at pp. 5-6.

[56] *Id.* at p. 6 (citing Rec. Doc. Nos. 259, 271).

[57] *Espy*, 18 F.3d at 1206.

[58] Rec. Doc. 293 at pp. 6-7.

[59] *Id.* at p. 7.

their interests in the criminal case while risking an adverse inference instruction in the civil case."[60] The United States contends that the fact that no party has yet to assert their Fifth Amendment rights is of no consequence.[61]

The United States claims that given the stage of the grand jury's investigation, "and the likelihood of parties with potential criminal exposure in this matter, the invocation of a party's Fifth Amendment rights may still occur here."[62] Further, the United States notes that some courts have permitted the Government to intervene and stay civil cases, even where the putative defendant declares that he will not assert his Fifth Amendment rights.[63] In addition, the United States argues that there is currently a motion pending before this Court on the validity of the trust at issue, and resolution of that issue will "certainly impact the grand jury's investigation and any charges that are brought."[64] The United States also highlights that a new complaint has been filed in this matter recently, and therefore it is likely that additional discovery will need to be conducted, which may allow a criminal litigant access to materials he otherwise would not be entitled to receive. The United States avers that "despite the fact that discovery has already begun here, the continuation of this case, the Court's ruling on key issues, and this matter's eventual trial would irreparably damage the grand jury's investigation," and therefore this matter should be stayed.[65]

In surreply, Nelson argues that while the United States claims that he engaged in "speculation"

---

[60] *Id.* at pp. 7-8.

[61] *Id*. at p. 8 n. 5.

[62] *Id.*

[63] *Id.* (citing *Sw. Recovery Group, LLC v. BP Am., Inc.*, 278 F.R.D. 162, 167 (E.D. La. 2012)).

[64] *Id.* at p. 8.

[65] *Id.*

when he stated that the formal criminal investigation began in July 2011, the United States has not denied this fact nor stated when the investigation began.[66] Nelson claims that this an attempt to "distract the Court from the real issue: the length of time during which the proposed interveners actually knew or reasonably should have known of their interest in the case."[67]

Next, Nelson contends that the United States has failed "to provide any specific prejudice it will suffer if this action is not stayed."[68] Finally, Nelson argues that the United States has failed to explain how the Court's ruling on issues in this case – mainly the validity of the trust – will impact the grand jury's investigation.[69] Nelson avers that this question is purely legal, and has already been briefed for the Court. Therefore, Nelson maintains that the United States has failed to satisfy its burden to demonstrate "substantial and irreparable prejudice."[70]

### III. Law and Analysis

#### A. Standard for a Stay

It is undisputed that a district court has inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants,"[71] and this authority includes the district court's wide discretion to grant a stay in a pending matter.[72] When "the interests of justice seem[] to require such action," a court may exercise its discretion to stay civil

---

[66] Rec. Doc. 298 at p. 2.

[67] *Id.*

[68] *Id.* at p. 3.

[69] *Id.*

[70] *Id.*

[71] *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

[72] *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990).

proceedings, postpone discovery, or impose protective orders and conditions.[73]

It is well recognized that a district court "may stay a civil proceeding during the pendency of a parallel criminal proceeding."[74]  Indeed, a district court may sometimes  stay a civil action "until the criminal case or the likelihood of a criminal case is ended."[75] Federal district courts are empowered to stay civil proceedings pending the completion of parallel criminal prosecutions, even when the request for a stay is made by the prosecution.[76] Although "[t]he simultaneous prosecution of civil and criminal actions is generally unobjectionable" because of the different interests promoted in the different suits,[77] a stay of the pending civil action may be appropriate "when there is a real and appreciable risk of self-incrimination."[78]  In fact, in some circumstances, a district court abuses its discretion by failing to stay discovery until applicable criminal statutes of limitation have run, if the stay would not impose undue hardship on the non-moving party.[79]

Although the Fifth Circuit has determined that a stay may be warranted where "special circumstances" exist to prevent a party from suffering substantial and irreparable prejudice,[80] courts

---

[73] *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *see also*, *Mayo v. Tri-Bell Indus.*, 787 F.2d 1007, 1012 (5th Cir. 1986).

[74] *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 668 (5th Cir. 1981).

[75] *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 655 (5th Cir. 2007) (citing *Wallace v. Kato*, 549 U.S. 384, 394 (2007) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996))).

[76] *Kordel*, 397 U.S. at 12 n. 27 ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution.") (citing *Campbell*, 307 F.2d at 478).

[77] *First Fin. Grp.*, 659 F.2d at 667.

[78] *Brumfield v. Shelton*, 727 F.Supp. 282, 284 (E.D. La. 1989) (citing *Kordel*, 391 U.S. at 8-9).

[79] *See Wehling*, 608 F.2d at 1084(district court abused its discretion in forcing plaintiff to choose between his Fifth Amendment right to silence and his lawsuit).

[80] *First Fin. Grp.*, 659 F.2d at 668; s*ee also, United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983).

within the Fifth Circuit have looked to six factors to determine whether the civil action should be stayed.[81]  These factors include:

1. The extent to which the issues in the criminal case overlap with those presented in the civil case;
2. The status of the criminal case, including whether the defendant has been indicted;
3. The private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by the delay;
4. The private interests of and burden on the defendant;
5. The interests of the courts; and
6. The public interest.[82]

## B. The United States' Right to Intervene

Nelson has challenged the United States' "grounds for intervention," and asserts that the United States has not complied with Rule 24(c), which requires a party seeking intervention to state the claim or defense for which intervention is sought. The Fifth Circuit has recognized the prosecution's interest in intervening in civil proceedings to stay discovery and protect a criminal investigation.[83] Moreover, other sections of this Court have found that when evidence demonstrates that the civil action and the criminal investigation include identical subject matter, the United States has carried its burden to show that it has a right to intervene pursuant to Rule 24.[84] Here, the United States has come forward with such evidence, and affirmed that the criminal investigation of Geller coincides with the accusations made in this matter. Therefore, the United States has demonstrated its right to intervene.

---

[81] *Alcala v. Tex. Webb Cty.*, 625 F. Supp. 2d 391, 399 (S.D. Tex. 2009) (collecting district court cases within the Fifth Circuit applying this test); *see also, Lebouef v. Global X-Ray and Testing Corp.*, No. 07-5755, 2008 U.S. Dist. LEXIS 6470, at *4 (E.D. La. Jan. 29, 2008) (Barbier, J.) ("To determine whether special circumstances exist, the court must 'balance the competing constitutional and procedural interests of the parties,' as illustrated through the six-factor test . . . .") (citation omitted).

[82] *Alcala*, F.Supp. 2d at 399.

[83] *Campbell*, 307 F.2d at 478.

[84] *See, e.g.*, *Sw. Recovery Group, LLC*, 278 F.R.D. at 167.

Nelson has also claimed that the pending motion should be denied because it was not timely made. "The concept of 'timeliness' in connection with motions for leave to intervene is a flexible one, which is left to the sound discretion of the trial court."[85] "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervener, but rather a guard against prejudicing the original parties by the failure to apply sooner."[86] In *John Doe No. 1 v. Glickman*,[87] the Fifth Circuit acknowledged that:

> Th[is] analysis is contextual; absolute measures of timeliness should be ignored." *Espy*, 18 F.3d at 1205. A court should ignore "[h]ow far the litigation has progressed when intervention is sought[,] ... the amount of time that may have elapsed since the institution of the action ... [, and] the likelihood that intervention may interfere with orderly judicial processes." *Stallworth*, 558 F.2d at 266.[88]

Instead, a Court must consider four factors to determine timeliness: (1) how long the potential intervener knew or reasonably should have known of her stake in the case into which she seeks to intervene; (2) the prejudice, if any, the existing parties may suffer because the potential intervener failed to intervene when she knew or reasonably should have known of her stake in that case; (3) the prejudice, if any, the potential intervener may suffer if the court does not let her intervene; and (4) any unusual circumstances that weigh in favor of or against a finding of timeliness.[89] However, "[t]hese factors are a framework and 'not a formula for determining timeliness.' A motion to intervene may still be timely even if all the factors do not weigh in favor of a finding of timeliness."[90]

---

[85] 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1916 at 529 (citing *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)).

[86] *Espy*, 18 F.3d at 1205.

[87] 256 F.3d 371 (5th Cir. 2001).

[88] *Id.* at 375 (alternations in original).

[89] *Id.* at 376.

[90] *Id.* (internal citations omitted).

In consideration of the first timeliness factor, the evidence does indicate the that United States knew, or should have known, of its stake in this matter for sometime, but failed to take action. The United States has also failed to provide an explanation for its delay. While the United States argues that the 2011 subpoena cited by Nelson did not relate to an investigation into the expenditure of the Warren trust funds, it avoids ever stating when the investigation into Geller's alleged illegal activity began. Therefore, this factor weighs in favor of finding the pending motion untimely.

However, it does not appear that the United States' delay in seeking intervention will prejudice any of the existing parties. The Court first notes that no party, with the exception of Nelson, opposes the pending motion. Additionally, on March 6, 2013, Plaintiff filed an amended complaint that added several new defendants to this action.[91] For this reason, the Court had already decided that it would continue the trial to a date to be determined later to allow the new parties to conduct discovery and motions practice.[92] Moreover, as the United States has noted, Nelson did not object to this continuance. As such, even without the United States' request for a stay, the Court had already determined that a continuance and the allowance of additional discovery are appropriate in this matter. Therefore, this Court finds that no additional prejudice will result from granting the United States' motion. As such, this factor weighs in favor of finding the pending motion timely.

The United States has argued that allowing discovery to continue would prejudice the grand jury proceedings against Geller. In response, Nelson has argued that most of the discovery in this case has been completed, and therefore there is no possible prejudice that can come from allowing this matter to proceed. Nelson is correct on this point; this is not a situation where a criminal defendant,

---

[91] Rec. Doc. 281.

[92] Rec. Doc. 271 (minute entry from status conference).

Geller, filed a civil case to benefit from the more lenient civil discovery. However, as this Court previously noted, due to the addition of several new defendants, this Court will have to reopen discovery for these parties. While it is true that Geller has already participated in the more liberal civil discovery available in this civil matter, now that it is known that a criminal investigation against him is underway, he could take a position in the ongoing discovery to protect against self-incrimination, which would deprive the newly added defendants of full discovery. Geller could also take such a position at trial and impede the cases of the defendants. There is plenty of civil litigation left in this case that could be adversely affected in the absence of a stay. Therefore, the Court finds that this factor weighs in favor of a stay.

Finally, the United States has not provided any evidence or argument to demonstrate "unusual circumstances" as to why it delayed filing this motion. As such, this factor does not weigh in favor of a finding of timeliness.

While not all of the factors weigh in favor of finding this motion timely, this Court is cognizant of the prejudice the motion could have on the other litigants.[93] As the Court finds that the pending motion would cause little to no prejudice to Nelson, the only party who objects to the United States' motion, the Court finds that the motion is timely under Rule 24. The Court will now address whether the United States has demonstrated that a stay is appropriate under the relevant factors.

## C. Application of Factors for Issuance of a Stay

---

[93] *Espy*, 18 F.3d at 1205.

18

*1. The extent to which the issues in the criminal case overlap with those presented in the civil case*

Where there exists overlap between the civil and criminal proceedings, courts often feel compelled to grant a stay.[94] Many courts have found that "the similarity of the issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay."[95] Neither party disputes that the subject matter of this suit is "identical" or very similar to the nature of the criminal investigation. Therefore, this factor weighs in favor of issuing a stay.

*2. Status of Criminal Proceedings*

Even when there are not yet criminal charges filed, "this fact does not militate against the granting of a stay of discovery."[96] In fact, some district courts within this Circuit have found that "when the government seeks a stay of civil discovery, the justification for obtaining a stay is often strongest before an indictment is handed down."[97] The United States has indicated that the investigation is ongoing and that grand jury proceedings have commenced. The Court finds that allowing discovery to continue could disrupt the progress of the criminal investigation, and therefore, this factor weighs in favor of a stay.

*3. Plaintiff's Interest*

Plaintiff has taken no position with regard to the pending motion. As such, this Court finds that no prejudice will come to Plaintiff by the issuance of a stay. Again, even without a stay, this matter

---

[94] *Astoria Entm't, Inc. v. Edwards*, No. 98-3359, 1999 U.S. Dist. LEXIS 6040, at *3 (E.D. La. Apr. 22, 1999) (Duval, J.).

[95] *See, e.g., Dominguez v. Hartford Fin. Servs. Grp.*, 530 F. Supp.2d 902, 906-07 (S.D. Tex. 2008).

[96] *SEC v. Offill*, No. 07-1643, 2008 WL 958072, at *3 (N.D. Tex. Apr. 9, 2008).

[97] *Id.* at *2-3.

would be delayed to account for the late inclusion of several new defendants, whose alleged involvement was not known until discovery was coming to an end, and which Nelson did not oppose. Therefore, this factor weighs in favor of the issuance of a stay.

    *4. Defendant's Burden*

    Here, while Geller has already participated in a great deal of discovery, now that the criminal investigation has been made known and additional parties must conduct discovery, Geller may be forced to choose between his civil discovery obligations and his ability to assert his Fifth Amendment privilege against self-incrimination. While Geller has not been indicted, the evidence indicates that the criminal investigation is active and an indictment is on the horizon; many of the other defendants, especially the newly added defendants, may rely on a defense that centers around the alleged fault of Geller. These defendants may not be able to receive the full extent of discovery they are entitled to in civil matters if Geller is to invoke his Fifth Amendment rights, now that Geller has been informed that he may face criminal charges. Accordingly, these defendants may be left with no real way to defend themselves, short of Geller forgoing his Fifth Amendment rights, if a stay is not granted here.

    The Court notes that "[i]f the defendant would be burdened by civil discovery on the same issues as a pending criminal case, this factor weighs in favor of a stay."[98] Geller and the other defendants may be burdened by responding to discovery in both related matters and Geller potentially would be faced with choosing between participating in discovery and testifying at trial and his right against self-incrimination. The United States Supreme Court has acknowledged that Fifth Amendment rights are "precious."[99] Courts have a duty to protect these rights.[100] Therefore, the Court finds that this

---

[98] *Doe v. Morris*, No. 11-1532, 2012 U.S. Dist. LEXIS 12454, at *4 (E.D. La. Feb. 2, 2012) (Vance, C.J.).

[99] *Miranda v. Arizona*, 384 U.S. 436, 457 (1966).

[100] *United States v. Demchak*, 545 F.2d 1029, 1031 (5th Cir. 1977).

factor weighs in favor of a stay.

### 5. The Court's Interest

"The Court has interests in judicial economy and expediency,"[101] and granting a stay serves those interests because "conducting the criminal proceedings first advances [] judicial economy."[102] If a stay were not granted, it is almost certain that duplicative discovery and legal findings would occur. Furthermore, allowing the criminal suit to proceed first may "streamline" this matter. There exists the possibility that collateral estoppel or *res judicata* will affect some or all of the overlapping issues.[103] As both parties have acknowledged, the Court has yet to rule on several contested issues in this matter. Therefore, proceeding with this action at this time will result in the use of judicial resources that may not be necessary if the case proceeds after the criminal investigation and action have been completed. This factor also weighs in favor of granting a stay.

### 6. The Public Interest

The Fifth Circuit has recognized that the public interest in law enforcement efforts through criminal investigation and prosecution of alleged fraud is substantial:

> The very fact that there is clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.[104]

---

[101] *Doe*, 2012 U.S. Dist. LEXIS 12454, at *6.

[102] *Offill*, 2008 WL 958072, at *3.

[103] *Emich Motors Corp. v. Gen Motors Corp.,* 340 U.S. 558, 568 (1951) ("It is well established that a prior criminal conviction may work as estoppel.") (citations omitted).

[104] *Campbell*, 307 F.2d at 487.

As noted several times before, Nelson is the only party in this action that opposes the request for a stay. One of Nelson's main contentions is that a stay would delay him from clearing his name of some of the allegations made against him in this matter. While the Court recognizes this as a valid concern, Fifth Circuit precedent advises that Nelson's interest must yield to law enforcement's prerogative in this situation. Additionally, as this matter would already be delayed due to the unopposed addition of several new defendants (which Nelson specifically did not oppose), the Court finds that the stay itself would not substantially harm Nelson's interests. Therefore, this factor weighs in favor of the issuance of a stay. On balance, this Court finds that the factors weigh in favor of a stay, and therefore will grant the pending motion.

### C. April 4, 2013 Status Conference

In addition, this Court held a status conference with all of the parties, including the United States, on April 4, 2013. In that conference, the United States communicated to the Court that in all likelihood it would only need a stay of this action for sixty days to preserve the integrity of the grand jury investigations. In light of the short amount of time the United States requests to stay this matter, and considering the fact that the trial would nonetheless have to be continued because of the recent addition of new parties, the Court finds further support for granting the pending motion, because the short length of this stay assuages much of the prejudice Nelson feared would result from an indefinite stay.

### D. Scope of the Stay

"The stay of a pending matter is ordinarily within the trial court's wide discretion to control the

22

course of the litigation, which includes authority to control the scope and pace of discovery."[105] Here, the Court will grant a complete stay of the case, because the Court is persuaded that allowing this case to continue would likely result in duplicative discovery and legal findings, as well as risk the integrity of the criminal proceedings. However, the Court will only issue a stay for sixty days. If the United States has not filed criminal charges after sixty days, the Court will order an in camera review to assess the status of the grand jury investigation and determine if the stay should be lifted.

## IV. Conclusion

For the reasons set forth above, the Court finds that the United States has met its burden to demonstrate that a stay in this matter is warranted. Accordingly,

**IT IS HEREBY ORDERED** that the United States' Motion to Intervene and Stay Civil Proceedings[106] is **GRANTED** and this litigation will be completely stayed for sixty days;

**IT IS FURTHER ORDERED** that if the United States has not filed criminal charges after the sixty day stay, it must provide the Court with an in camera review so that the Court can assess the status of the grand jury investigation;

---

[105] *In re Ramu Corp.*, 903 F.2d at 318.

[106] Rec. Doc. 277.

23

**IT IS FURTHER ORDERED** that if criminal charges are filed against Geller within sixty days of this order, this matter will be stayed and administratively closed until such time as the criminal matter is resolved; the United States attorney is to provide the Court with the status of this matter every six months.

**NEW ORLEANS, LOUISIANA**, this __9th__ day of April, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

24