## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TERRELL LEBEAUX WARREN**                    **CIVIL ACTION**

**VERSUS**                                    **NO. 11-2282**

**BENJAMIN GELLER, et al.**                   **SECTION: "G"(1)**

### ORDER AND REASONS

Before the Court is Defendants Beatriz Cadena, Frances Moore, and Morgan Keegan & Company, Inc.'s (collectively, "Defendants") "Motion to Stay Pending Arbitration or, Alternatively, to Dismiss."[1] Defendants seek to compel arbitration pursuant to the Morgan Keegan Client Agreement (the "Client Agreement") that co-defendant Benjamin Geller signed in his capacity as trustee of the Frank Warren Irrevocable Insurance Trust (the "Trust"). Alternatively, Defendants seek to have this action dismissed for lack of standing. Finally, Defendants are requesting the Court award attorney's fees. After considering the motion, the memorandum in support,[2] the memorandum in opposition,[3] the supplemental memoranda,[4] and the record, the Court will grant-in-part the pending motion, deny-in-part, and defer-in-part, pending further briefing. The court will stay execution of its order granting Defendants' motion to stay pending arbitration and denying or otherwise referring to arbitration Defendants' motion for attorney's fees, pending its decision on the motion to dismiss based on Plaintiff's alleged lack of standing.

---

[1] Rec. Doc. 335.

[2] Rec. Doc. 335-1.

[3] Rec. Doc. 340.

[4] Rec. Doc. 354 and Rec. Doc. 367.

1

# I. Background

## A. Factual Background

Plaintiff Terrell LeBeaux Warren ("Plaintiff") filed the initial complaint in this action on September 12, 2011.[5] On August 21, 2012, Plaintiff filed an amended complaint.[6] On March 6, 2013, Plaintiff filed a second amended complaint.[7] The second amended complaint names Benjamin Geller ("Geller"),  Beatriz Cadena ("Cadena"), Frances Moore ("Moore"), Morgan Keegan & Company, Inc. ("Morgan Keegan"), Arlyn Nelson ("Nelson"), Virginia Insurance Company ("Virginia Insurance"), GE Life and Annuity Assurance Company ("GE"), Genworth Life and Annuity Insurance Company ("Genworth"), and Continental Casualty Company ("Continental") as defendants.[8] On January 23, 2014, all defendants except for Geller, Cadena, Moore, and Morgan Keegan were dismissed from the action.[9]

Geller was a sports agent and financial adviser to decedent Frank Warren ("Warren"), a former professional football player with the New Orleans Saints of the National Football League ("NFL").[10] Plaintiff is the widow of Frank Warren, who is bringing this action individually and on behalf of her four minor children who were fathered by Warren.[11] In 1994, Geller suggested to

---

[5] Rec. Doc. 1

[6] Rec. Doc. 57.

[7] Rec. Doc. 281.

[8] *Id.* at ¶ 2.

[9] Rec. Doc. 356.

[10] Rec. Doc. 281 at ¶¶ 6, 12.

[11] *Id.* at p. 1.

Warren that he purchase a life insurance policy from Nelson.[12]

Plaintiff alleges that Nelson represented himself to be a licensed insurance broker, but in fact this was false, and he was not licensed as an to agent to sell insurance in the State of Louisiana. Nonetheless, on September 26, 1994, Nelson, "who was located in Washington State, prepared and filled out" an application for a $1,000,000 life insurance policy for Warren and mailed the application to Geller.[13] Geller had Warren sign the document in New Orleans, Louisiana, and it was sent back to Geller in Washington State.[14] Warren paid all premiums until his death in 2002.[15]

Upon Warren's death, Plaintiff alleges that Nelson made a claim to Genworth for payment of $1,000,000 under Warren's life insurance policy.[16] This money was to be paid to the Frank Warren Irrevocable Insurance Trust, of which Geller was trustee.[17]According to Plaintiff, Warren, in fact, never appointed Geller as trustee of the Trust.[18] Rather, Plaintiff alleges that "the two Trust documents  [needed to establish the Trust] were somehow notarized containing blanks, where the trustees were to be named and one of the Trust documents did not have the Parish where it was notarized, filled in."[19]

---

[12] *Id.* at ¶ 12.

[13] *Id.* at ¶ 17.

[14] *Id.* at ¶¶ 10–11.

[15] *Id.* at ¶ 22.

[16] *Id.* at ¶ 27.

[17] *Id.*

[18] *Id.* at ¶ 22 (referring to Geller as "the alleged trustee"); *see also id.* at ¶ 23 ("[Geller] never heard anything . . . regarding the proposed Trust documents. Geller stated that he believed the Trust issue to be over and/or dead.").

[19] *Id.* at ¶ 15.

According to Plaintiff, investment bank Morgan Keegan received the proceeds from Warren's life insurance policy and put them into the Trust account of which it was in charge.[20] "The funds were then," according to Plaintiff, "through breach of fiduciary duty, negligence and fraud allowed to be jettisoned to Geller."[21] This was done, Plaintiff alleges, through the actions of Moore and Cadena, employees of Morgan Keegan, who acted in concert with Geller and Nelson to divert the money from the Trust to Geller after Nelson conspired with Gellar to open a Morgan Keegan account for the Trust. According to Plaintiff, Geller depleted most of the Trust funds within nineteen months, leaving a balance of $189,468.92 by the end of December, 2004.[22] By December of 2007, all of the Trust funds were exhausted and the Trust account was closed with a balance of zero.[23]

Plaintiff brings, among other causes of action, claims against Geller, Cadena, Moore, and Morgan Keller for breach of fiduciary duty, breach of due diligence, negligence, fraud, and conversion.[24]

**B. Procedural Background**

On May 2013, the Court stayed and administratively closed the matter pending resolution of a criminal case against Geller.[25] On October 24, 2013, the Court re-opened the matter following resolution of Geller's criminal trial.[26] The Court granted the parties until November 22, 2013 to

---

[20] *Id.* at ¶ 9.

[21] *Id.*

[22] *Id.* at ¶ 37.

[23] *Id.* at ¶40.

[24] *Id.* at ¶ 50.

[25] Rec. Doc. 306.

[26] Rec. Doc. 317.

respond to Plaintiff's Second Amended Complaint.[27] On November 22, 2013, Defendants filed the pending "Motion to Stay Pending Arbitration or, Alternatively, to Dismiss."[28] On December 9, 2013, Plaintiff filed a memorandum in opposition to the motion.[29] On December 12, 2013, the Court ordered the parties to provide further briefing on the pending motion by December 17, 2013.[30] On December 17, 2013, Defendants filed a supplemental memorandum in support of the pending motion.[31] Plaintiff did not file anything into the record.

At a status conference held on June 4, 2014, the Court granted Plaintiff's counsel until June 11, 2014 to file a supplemental memorandum on Defendants' pending motion.[32] On June 11, 2014, Plaintiff's counsel filed the supplemental memorandum.[33]

## II. Parties' Arguments

### A. Motion to Stay Pending Arbitration or, Alternatively, to Dismiss

In support of the pending motion, Defendants argue that "all of the claims asserted against . . . Defendants are covered by the arbitration clause of the Client Agreement [that established the Trust]. All must therefore be referred to arbitration."[34] Defendants maintain that the arbitration clause in the Client Agreement is subject to the Federal Arbitration Act (the "FAA"), which provides

---

[27] *Id.*

[28] Rec. Doc. 335.

[29] Rec. Doc. 340.

[30] Rec. Doc 345.

[31] Rec. Doc. 354.

[32] Rec. Doc. 366.

[33] Rec. Doc. 367.

[34] Rec. Doc. 335-1 at 3.

that arbitration agreements are "valid, irrevocable, and enforceable."[35] Defendants quote from the

Supreme Court case of *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*,[36]

in which the Supreme Court stated, "[A]ny doubts concerning the scope of the arbitrable issues

should be resolved in favor of arbitration, whether the problem at hand is the construction of the

contract language itself or an allegation of wavier, delay, or a like defense to arbitrability."[37]

According to Defendants, under Fifth Circuit law, "district courts [are] to conduct a two step

analysis to determine whether a party may be compelled to arbitrate."[38] Defendants characterize the

test as follows:

> The first step is itself subdivided into two inquires: *first*, the court must determine
> whether a valid agreement to arbitrate exists; and, *second*, the court must determine
> whether the dispute in question falls within the scope of that agreement. If the court
> determines the parties are bound by an arbitration agreement and the dispute falls
> within the scope of that agreement, the court must then determine whether any
> federal statue or policy renders the claim nonarbitrable.[39]

Defendants argue that "[h]ere, each prong of the test for arbitrability is easily met."[40]

Defendants claim that "the Client Agreement is a valid arbitration agreement."[41] Defendants also

claim that "since the Client Agreement entitles Morgan Keegan to arbitrate 'all controversies' that

---

[35] *Id.*

[36] *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983).

[37] Rec. Doc. 335-1 at 3 (quoting *Moses H. Cone*, 460 U.S. at 25).

[38] *Id.* (citing *Jones v. Haliburton Co.*, 583 F.3d 228, 233 (5th Cir. 2009)).

[39] *Id.* at 4 (internal citations omitted).

[40] *Id.*

[41] *Id.*

may arise from the Trust's Morgan Keegan account . . . and since the Plaintiffs'[42] claims all arise from that account, the Plaintiffs' dispute with . . . Defendants falls within the scope of the Client Agreement."[43] Finally, Defendants assert that "no federal statutes or policies foreclose enforcement of the agreement to arbitrate."[44]

### 1. Defendants' Argument that the Arbitration Agreement is Valid

Elaborating on these points, Defendants quote Fifth Circuit case law for the proposition that "[g]enerally, principles of state contract law govern the question of whether the parties formed a valid agreement to arbitrate."[45] Moreover, Defendants cite to Fifth Circuit case law for the additional proposition that "non-signatories to arbitration agreements may likewise be compelled to arbitrate under 'ordinary principles of contract and agency law.'"[46] Defendants claim that three of the six "theories for compelling a non-signatory to arbitrate [ ] are implicated here": (a) equitable estoppel, (b) third-party beneficiary theory, and (c) agency theory.[47]

Under an equitable estoppel theory, Defendants argue that Plaintiff cannot avoid "[the] obligation to arbitrate claims arising from the Trust's account."[48] According to Defendants, "Plaintiffs have accused Morgan Keegan of breaching its duties it allegedly owed to them that arose

---

[42] Throughout their memoranda, Defendants and Plaintiff use the plural "Plaintiffs." However, the Court notes that the only Plaintiff in this action is Terrell LeBeaux Warren, who brings this action individually and on behalf of her four minor children.

[43] Id.

[44] Id.

[45] Id. (quoting JP Morgan Chase & Co. v. Conegie, 492 F.3d 596, 598 (5th Cir. 2007)).

[46] Id. at 5 (quoting Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 355 (5th Cir. 2003)).

[47] Id.

[48] Id.

out of the Trust account and the Client Agreement that governed that account." As such, "the Plaintiffs have embraced the Client Agreement by asserting claims that cannot be determined without reference to it." "Thus," according to Defendant, "they are bound by the Client Agreement's arbitration provision."[49]

Next, Defendants argue that Plaintiff is bound by the arbitration clause because they are third-party beneficiaries of the Client Agreement.[50] According to Defendants, "[u]nder Louisiana law, three elements must be satisfied for a court to find that the parties to a contract intended to create a third-party beneficiary to the contract."[51] The three conditions are: (1) a stipulation in favor of the third-party that is clear; (2) certainty as to the benefit provided to the third-party; and (3) a benefit that is not merely incidental to the contract between the parties.[52] Defendants maintain that under the Client Agreement all three elements are met. First, the account was a trust administered for the benefit of another.[53] Second, the benefits were certain as the Trust provided for monthly payments of $4,000.[54] Third, the benefits were not incidental to the Trust but the "sole reason" for the Trust being created.[55]

Lastly, Defendants argue that the arbitration agreement is valid under an agency theory.[56]

---

[49] *Id.*

[50] *Id.*

[51] *Id.* (citing *Joseph v. Hospital Serv. Dist. No. 2 of Parish of St. Mary*, 939 So.2d 1206, 1212 (La. 2006)).

[52] *Id.* (citing *Joseph*, 939 So.2d at 1212).

[53] *Id.* at 7–8.

[54] *Id.*

[55] *Id.*

[56] *Id.*

According to Defendants, Geller, as "a fiduciary of the Trust who was empowered to act on [the Trust's] behalf, bound the Trust to the Client Agreement and the arbitration provision therein."[57] Defendants further contend that "all of the Plaintiffs' rights and obligations *vis-a-vis* . . . Defendants flowed through the Trust." Thus, "the Plaintiffs have no greater rights against . . . Defendants than the Trust itself does" and "the Plaintiffs are [ ] bound by the Trust's agreement to arbitrate."[58]

*2. Defendants' Argument that the Dispute is Covered by the Arbitration Agreement*

Defendants assert that "[t]he Client Agreement's arbitration clause is broad and governs the claims asserted by the Plaintiffs in this suit."[59] Defendants point to Fifth Circuit case law, stating that "[t]he Fifth Circuit has held that less-expansively worded arbitration clauses [than the one at issue in this case] that only compel arbitration of claims 'relating to' a contract, and that do not attempt to compel arbitration of actions arising from 'any cause whatsoever,' are broad and are intended to 'reach all aspects of the relationship' between the parties."[60] According to Defendants, "Plaintiffs cannot reasonably dispute that their claims against . . . Defendants arise from Morgan Keegan's handling of the Trust account and are therefore within the scope of the Client Agreement's arbitration provision."[61] According to Defendants, the allegations relate to "transactions arising out of the Trust's account," and, thus, are subject to arbitration under the terms of the Client

---

[57] *Id.* at 9.

[58] *Id.*

[59] *Id.* at 10.

[60] *Id.* (citing *Nauru Phosphate Royalties, Inc. v. Drago Daig Interests, Inc.*, 138 F.3d 160, 165 (5th Cir. 1998)).

[61] *Id.* at 11.

Agreement.[62]

### 3. Defendants' Argument that No Federal Law Prohibits Enforcement of the Arbitration Clause

Defendants claim that "no federal law exists that would prevent the court from ordering that the claims against Morgan Keegan be determined in arbitration."[63] Citing an unpublished Fifth Circuit opinion, *Blaustein v. Huete*,[64] Defendants further claim that "the Fifth Circuit has consistently held that, where an enforceable and applicable arbitration agreement exists, federal law requires arbitration of the types of claims the Plaintiffs have asserted here."[65]

### 4. Defendants' Argument for Attorney's Fees

Defendants maintain that "[b]oth federal law interpreting the FAA and the Client Agreement mandate that the Plaintiffs should be ordered to pay . . . Defendants' attorneys' fees and costs related to this Motion to Stay."[66] According to Defendants, they "notified the Plaintiffs on numerous occasions that their claims were subject to arbitration, and that they would be liable for . . . Defendants' costs and fees incurred in enforcing their right to arbitrate."[67] Defendants assert that despite this, "Plaintiffs unreasonably refused to arbitrate."[68] Furthermore, Defendants argue that "the Client Agreement itself contains a clause requiring that '[a]ny expenses, including costs and

---

[62] *Id.*

[63] *Id.*

[64] 449 F. App'x 347, 349 (5th Cir. 2011).

[65] Rec. Doc. 335-1 at 11 (citing *Blaustein*, 449 F. App'x at 349).

[66] *Id.* at 12.

[67] *Id.* at 13.

[68] *Id.*

attorney's fees (whether for outside or inside counsel), incurred by Morgan Keegan . . . in enforcing Morgan Keegan's rights under this agreement shall be borne solely by' the account holder."[69]

   *5. Defendants' Argument that Plaintiff's Claims Should be Dismissed for Lack of Standing*

   Finally, Defendants argue that "Plaintiffs' claims against . . . Defendants should be dismissed because the Plaintiffs lack standing to pursue them."[70] Defendants assert that under Louisiana law, "a trustee—not a beneficiary—is the proper plaintiff to sue to enforce a right of the trust estate."[71] According to Defendants, "[t]he sole statutory exception to this rule permits beneficiaries to sue third parties only if there is no trustee or the trustee cannot be subjected to the jurisdiction of the proper court."[72] Defendants assert that "James Shields, lawyer for the Plaintiffs, is the current trustee of the Trust and could pursue claims on behalf of the Trust in this court."[73] Thus, "Shields is therefore the proper plaintiff in this action" and "the Plaintiffs . . . lack standing to bring claims on behalf of the Trust."[74]

**B. Plaintiff's Memorandum in Opposition**

   *1. Plaintiff's Argument that the Arbitration Agreement is Not Valid*

   Regarding Defendants' argument that the arbitration agreement is valid, Plaintiff alleges:

   Morgan Keegan's officers participated in the fraud. Moore was an insider and officer who brought the $1,000,300.00 account to Morgan Keegan. Moore was the party who had Geller execute the Client Agreement. Moore thereon transferred over

---

[69] *Id.*

[70] *Id.* at 14.

[71] *Id.* (citing La. R.S. 9:2222; La. Code of Civ. P. Art. 699) (internal quotation marks omitted).

[72] *Id.* (citing La. R.S. 9:2222(2)) (internal quotation marks omitted).

[73] *Id.*

[74] *Id.*

$811,000.00 from the Trust account into Geller's personal and business accounts in less than eighteen months from inception of account. Moore closes the Trust account with a zero balance.[75]

According to Plaintiff, "Moore and Cadena are extremely fortunate that they were not prosecuted by the U.S. Attorney's office for aiding and abetting Geller in fraud."[76] As a result of these alleged fraudulent acts, Plaintiff insists that "[i]t is nonsense for Morgan Keegan to argue that arbitration is mandated, when Plaintiffs' were never involved in any manner, nor noticed in any manner, and that the co-conspirators Geller and Moore executed and prepared the Client Agreement."[77]

As for the argument that the claims are covered by the scope of the arbitration agreement, Plaintiff cites the Texas Supreme Court case of *U.S. Fidelity & Guaranty Co. v. Adoue & Lobit*[78] for the rule that "a bank cannot apply [a] trust fund to the payment of the personal debts of the trustee or guardian or permit its diversion to the personal use of such guardian."[79] Plaintiff claims that here, "the Bank's Trust account officer Moore and her superior officer Cadena, [sic] assisted Geller, [sic] in opening the *Frank Warren Irrevocable Life Insurance Trust* account."[80] Moreover, Plaintiff contends that "[t]he [Texas Supreme] Court in *U.S. Fidelity* further held and stated that if the bank knew that the money that was being transferred into the Trustee's personal accounts did not belong

---

[75] Rec. Doc. 340 at 7 (internal citations omitted).

[76] *Id.* at 7.

[77] *Id.*

[78] 104 Tex. 379, 137 S.W. 648 (Tex. 1911).

[79] Rec. Doc. 340 at 8.

[80] *Id.*

12

to the Trustee, the bank had no authority to transfer the funds to the Trustee's personal accounts."[81]

Plaintiff continues that,

> Moore and Cadena were "knee deep" with knowledge of what Geller was doing. They knowingly transferred over $811,000.00 from the Trust account, to personal and business accounts of the Trustee. They knowingly paid from the Trust account, airline tickets, hotel expenses, purchase of furniture, and other frivolous items, such as personal trips and expenses to Las Vegas and New York, concerts.[82]

As a result, Plaintiff states that "[i]n eighteen (18) months, from the time the Trust was opened by Morgan Keegan, funds plus interest in the amount of $811,000.00 had been transferred by Moore and Cadena to Geller's personal accounts at the same bank as the Trust account, leaving a balance of $189,468.92 in the Trust account."[83]

Plaintiff concedes that the Connecticut Supreme Court case of *Aetna Life and Casualty Co. v. Union Trust Co.*,[84] is favorable to Defendants' case.[85] However, according to Plaintiff, that case is distinguishable from the case here: "In *Aetna Life*, it was shown that where the Trust account was only designated as Trust account and did not indicate whether funds might belong to account owner or someone else, the bank was not liable for negligent transfers of Trust funds to personal account of Trustee."[86] Here, by contrast, Plaintiff asserts that "[i]n Moore's deposition, she acknowledged over and over that the Trust was for the heirs of Frank Warren, and that Geller was Trustee, who was

---

[81] *Id.* at 9 (internal citations omitted).

[82] *Id.*

[83] *Id.*

[84] 230 Conn. 779, 646 A.2d 799 (1994).

[85] Rec. Doc. 340 at 9–10.

[86] *Id.*

only to take care of the Trust."[87] As such, Plaintiff contends, "[t]he scenario existing in *Aetna Life* cited by Defendants, does not exist in case at Bar."[88] Plaintiff concludes from this that, "Without addressing issue [sic] of fraud, Defendants, as shown in *U.S. Fidelity* and *Duckett*, Morgan Keegan and its employees, are liable for the transferring of trust funds to a person who did not own the funds. Add fraud to the elements of *U.S. Fidelity* and *Duckett*, there is no doubt that this matter belongs in Federal Court before a jury, as pled."[89]

Additionally, Plaintiff contends that "it would be inconceivable that fraud, abetting fraud and/or negligence of the magnitude in the matter at Bar, could be mandated to be arbitrated by an arbitrator, and pursuant to paragraphs 4 and 5 of the Client Agreement that Geller (who is now imprisoned) executed."[90] According to Plaintiff, "Moore knew the funds did not belong to Geller. Moore knew the funds belonged to a Trust for Frank Warren's wife and children to live off of and benefit from."[91] Plaintiff further explains,

> Geller has been sentenced and will be incarcerated for fraud. Geller's crime was aided by the actions of Defendants Morgan Keegan through Moore, Cadena and others. Defendants are fortunate they were not prosecuted for criminal fraud for abetting Defendant Geller. Defendants are now seeking protection from civil fraud and negligence, under the subject Client Agreement document, which was executed between the criminal trustee Geller and personal friend of trust account manager Moore of Morgan Keegan.[92]

Plaintiff reiterates her earlier argument that "it would be inconceivable that the actions of the

---

[87] *Id.* at 10.

[88] *Id.* (internal citations omitted).

[89] *Id.* at 10–11 (internal citations omitted).

[90] *Id.* at 12 (internal citations omitted).

[91] *Id.* at 12.

[92] *Id.* at 15 (internal citations omitted).

Defendants in abetting the theft of over a million dollars could possibly be protected from Federal litigation by the Client Agreement document, namely paragraphs 4 and 5, executed by the criminal that stole the trust funds."[93] According to Plaintiff, "[T]here is nothing in the FAA or cited from the FAA, that indicates theft and abetting theft through civil fraud and gross negligence is favored for arbitration."[94] Plaintiff states:

> In the case at Bar, the Client Agreement was signed by a criminal posing as a Trustee. The Client Agreement was not signed by Plaintiffs, nor was it ever shown to Plaintiffs, at any time. Plaintiffs consented to nothing, and over a period of years, Defendants sent monthly monies in the amount of $4,800.00 a month to Plaintiffs, but never revealed the Client Agreement to Plaintiffs, at any time. The Client Agreement falls by fraud.
> There is nothing whatsoever stated in the Client Agreement that covers actions of fraud, and abetting of fraud and theft by employees of Defendant Morgan Keegan. By logic and common sense, criminal fraud sends one Defendant to jail, as is done in case at Bar, and civil fraud connected with criminal fraud is adjudicated in a court of law, not in arbitration. Neither of the two step analysis in *Jones* is met and does not apply to the circumstances and facts of the case at Bar.[95]

Plaintiff continues,

> Plaintiffs, who owned the funds, never signed or saw the Client Agreement documents executed by the criminal Trustee Geller. Plaintiffs never saw or met Defendant Moore, nor were they friends and/or neighbors of Defendant Moore, as was the criminal Trustee Geller. Further, Plaintiffs were not aware for eleven (11) years that Defendant Moore had transferred over $811,000.00 to the personal and business accounts of Trustee Geller within an eighteen (18) month period of time, and then transferred the remaining funds to Trustee Geller and closing the Trust account with a zero balance.[96]

Thus, Plaintiff concludes that "*Bridas, JP Morgan Chase,* and *Washington Mutual*, cited by

---

[93] *Id.* (internal citations omitted).

[94] *Id.*

[95] *Id.* at 16.

[96] *Id.* at 17.

Defendants, do not remotely address the issues before this Court, of the criminal Trustee Geller, using his neighbor/friend and financial account officer Moore at Morgan Keegan, to aid in stealing and/or wasting over a million dollars of depositors money."[97]

### 2. Plaintiff's Argument that Equitable Estoppel Does Not Apply to the Arbitration Agreement

Regarding Defendants' equitable estoppel argument, Plaintiff argues that the unpublished Fifth Circuit case of *Blaustein*, cited by Defendants, is distinguishable because "Plaintiffs have brought no action under the Client Agreement, as yet. The Client Agreement, was produced by Defendants in discovery, after litigation was filed."[98] Furthermore, *Blaustein* is distinguishable, according to Plaintiff, because "Plaintiffs [sic] cause of action, is based upon fraud in Defendants aiding and abetting the criminal Trustee Geller in jettisoning over $1,000,000.00 from the Trust account."[99] Finally, Plaintiff argues that "[t]his is misapplication of *Blaustein* or logic, by Defendants. Plaintiffs are suing Defendants in part, pursuant to fraud, abetting fraud and gross negligence as involves financial officers in fraud with the criminal Trustee. None of these causes of action were present in *Blaustein*, nor does the subject Client Agreement address these claims."[100]

### 3. Plaintiff's Argument that the Arbitration Agreement is Not Binding Under a Third-Party Beneficiary Theory

Regarding Defendants' third-party beneficiary argument, Plaintiff argues that "[the] intentions requirement, cited [sic] *Conegie*, as involves the Client Agreement, is not present in case at Bar. Plaintiffs' are not a party to anything and had no knowledge of anything, until after litigation

---

[97] *Id.* (internal citations omitted).

[98] *Id.*

[99] *Id.*

[100] *Id.* at 18 (internal citations omitted).

16

is filed seven (7) years after the Trust account was looted and closed with a zero balance by Defendants."[101]

### 4. Plaintiff's Argument that Standing Exists

Plaintiff addresses Defendants' argument regarding lack of standing by stating that,

> This argument is rather puzzling, based on holdings in *U.S. Fidelity*, and *Duckett*, cited at beginning of Law and Argument hereinabove. As shown in *U.S. Fidelity*, the bank transferred trust funds to personal accounts of the Trustee. These two cases hold simply that "the bank is liable if the bank had knowledge that the funds transferred did not belong to the Trustee."
>
> In the case at Bar, the bank's financial officer Moore, who is a personal friend and neighbor of the criminal Trustee Geller, had knowledge and knew the funds belonged to Plaintiffs' [sic] and not the Trustee. Yet, Moore transfers over $811,000.00 within the first eighteen months of the trust account's inception, to her personal friend and criminal Trustee Geller's personal and business accounts at Morgan Keegan, and paid for fraudulent charges for travel and entertainment from the Trust account. Further, in *American Exchange Nat. Bank v. Loretta Gold & Silver Mining Co.,* the Court found the bank liable where the Trustee was withdrawing funds from trust account and diverting to his personal accounts. In the case at Bar, Moore for Morgan Keegan was actually creating the transfers of funds from the Trust account, in which she knew and had knowledge that the funds belonged to the Trust, to her personal friend and neighbor's personal and business accounts at Morgan Keegan.[102]

### 5. Plaintiff's Argument For Attorneys' Fees

Regarding Defendants' argument for attorneys' fees, Plaintiff states,

> Morgan Keegan seeks attorney fees and costs in defending the fraudulent actions and aiding and abetting theft of over $1,000,000.00, by its Defendant employees, Moore, Cadena and others. This is a rather shameful and amazing assertion by Defendants, considering their employees could have been prosecuted by the U.S. Attorney for aiding and abetting a crime. Here, the employees are joint tort feasors in the Geller actions.[103]

---

[101] *Id.* (internal citations omitted).

[102] *Id.* at 19 (internal citations omitted).

[103] *Id.* at 20.

17

Rather, Plaintiff asserts that "attorney fees and costs should be awarded to Plaintiffs' [sic]. Plaintiffs' [sic] again ask this Court for attorney fees and costs in responding to Defendants [sic] subject Motion, and this be decided in due course."[104]

### C. Defendants' Supplemental Memorandum

In their supplemental memorandum, Defendants cite to the Supreme Court cases of *Buckeye Check Cashing, Inc. v. Cardegna*[105] and *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*[106] for the proposition that attacks on the validity of a contract containing an arbitration provision—as opposed to attacks on an arbitration provision itself—must be heard by arbitrators, not by courts.[107] Defendants specifically point to *Prima Paint* as an analogous case. According to Defendants, in *Prima Paint*,

> The plaintiff attempted to avoid arbitration by claiming that the contract with the arbitration clause was procured by fraud. The U.S. Supreme Court held that the claims of fraud related to the creation of the contract had to be heard by arbitrators, and not by a court, because "the statutory language [of the FAA] does not permit the federal court[s] to consider claims of fraud in the inducement of the contract generally… [Instead,] a federal court may consider only issues relating to the making and performance of the agreement to arbitrate [specifically].[108]

Moreover, Defendants also point to Fifth Circuit precedent for this position. They quote from *Bhatia v. Johnston*,[109] where the Fifth Circuit held that the plaintiff's claims had to be referred to arbitration because the plaintiff "did not assert that the arbitration clause alone, as opposed to the customer

---

[104] *Id.*

[105] 546 U.S. 440, 445–46 (2006).

[106] 388 U.S. 395, 402 (1967).

[107] Rec. Doc. 354 at 2.

[108] *Id.* (internal citations omitted).

[109] 818 F.2d 418 (5th Cir. 1987).

agreement generally, was induced by the misrepresentations and actions of" the defendants.[110] Defendants also quote from *Primerica Life Ins. Co. v. Brown*,[111] where the Fifth Circuit similarly stated, "[U]nless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute."[112]

Defendants note that "[h]ere, the Plaintiffs have challenged the validity of the Client Agreement in its entirety as opposed to challenging the validity of the Client Agreement's arbitration provision." As Defendants understand Plaintiff's argument, "Plaintiffs have suggested the arbitration provision is unenforceable, not because it is somehow deficient on its own, but solely because the Client Agreement is deficient." This, however, according to Defendants, is a position that courts have "uniformly rejected."[113] As such, Defendants conclude that because "Plaintiffs have not attacked the arbitration provision specifically, their objections must be heard by arbitrators, not by this Court."[114]

As for Plaintiff's claim that fraud claims are not suitable for arbitration, Defendants assert that "courts regularly and consistently refer claims of fraud and negligence to arbitration."[115] According to Defendants, "[t]he Client Agreement is broadly phrased and mandates that 'all controversies' be submitted to arbitration; it makes no exception for controversies involving claims

---

[110] Rec. Doc. 354 at 4 (quoting *Johnson*, 818 F.2d at 421–22).

[111] 304 F.3d 469 (5th Cir. 2000).

[112] 304 F.3d at 472.

[113] Rec. Doc. 354 at 4.

[114] *Id.* at 5.

[115] *Id.* at 6.

19

of fraud and/or negligence."[116] Therefore, Defendants argue that "Plaintiffs' argument that the nature of their claims precludes them from arbitration should therefore be rejected."[117]

Finally, Defendants assert that "Plaintiffs are bound by the arbitration provision here under three distinct theories: equitable estoppel, the third-party beneficiary theory, and the agency theory."[118] Defendants first contend that Plaintiff has conceded Defendant's agency theory argument because "Plaintiffs completely fail to acknowledge . . . Defendants' well-reasoned analysis showing why the Plaintiffs are bound by the Client Agreement's arbitration provision under the agency theory."[119] Moreover, regarding Plaintiff's argument that equitable estoppel does not apply because Plaintiff has not brought a claim under the Client Agreement, Defendants argue that "Plaintiffs fail to account for the fact that their whole relationship with . . . Defendants . . . is governed by the Client Agreement" and further, that "Plaintiffs embraced the Client Agreement by accepting payments from the Trust's Morgan Keegan account on a regular basis for a period of years."[120] Finally, regarding the third-party beneficiary theory, Defendants state that Plaintiff's argument that she did not intend to be bound at the time the Client Agreement was executed is irrelevant because courts "should look to the intentions of the *parties to the Client Agreement* to determine whether they intended to make the Plaintiffs third-party (i.e. non-signatory and non-party) beneficiaries to the Client Agreement."[121]

---

[116] *Id.*

[117] *Id.*

[118] *Id.* at 7.

[119] *Id.*

[120] *Id.*

[121] *Id.* at 8 (emphasis in original) (citing *JP Morgan Chase & Co. v. Conegie*, 492 F.3d 596, 600 (5th Cir. 2007)).

In this case, Defendants argue that the parties to the Client Agreement intended to make Plaintiff a beneficiary under the Client Agreement.[122]

Defendants conclude by contending that Plaintiff has failed to address Defendants' argument that Plaintiff lacks standing to bring this lawsuit.[123] Even though Plaintiff's opposition has a section "suggesting [she] oppose[s] this argument for dismissal," Defendants call Plaintiff's response "vague" and "a complete failure to object" because "at no point in that section do[es] the Plaintiff[] discuss why [she is] the proper Plaintiff[ ] in this suit."[124]

## D. *Plaintiff's Supplemental Memorandum*

In her supplemental memorandum, Plaintiff addresses Defendants' argument that she is bound to the arbitration agreement as a third-party beneficiary by stating, "Defendants have trouble explaining how these parties could be a third party **and intend anything** when none were ever contacted, none ever signed anything, and none of the parties ever saw anything at anytime."[125] Plaintiff continues, "Defendants cannot escape the fact that Plaintiffs did not bring litigation contending the contract or the arbitration clause was fraudulently executed by Geller or that Geller didn't have authority to execute the agreement."[126] Plaintiff also questions Defendants' reliance on *Bridas*, arguing that there, the Fifth Circuit "held that there does not **exist** 'a case where a third party beneficiary has been bound to arbitrate a dispute, arising under an agreement to which the third party

---

[122] *Id.*

[123] *Id.* at 9.

[124] *Id.*

[125] Rec. Doc. 367 at 6 (emphasis in original).

[126] *Id.* at 6–7.

beneficiaries were not signatories to the arbitration agreement.'"[127]

Plaintiff also quotes the out-of-circuit case of *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S*:[128] "the fact that a person is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement, does not make him a third-party beneficiary."[129] Finally, Plaintiff points to the Fifth Circuit case of *Westmoreland v. Sadoux et al*,[130] where Plaintiff claims that the Fifth Circuit "weighed in on the issue stating non-signatories cannot be a part of arbitration except in rare circumstances."[131] According to Plaintiff, "the matter at Bar does not present a rare circumstance as envisioned by the Fifth Circuit Court of Appeals in *Westmoreland*."[132] Plaintiff adopts the above arguments to apply to Defendant's agency theory as well.[133]

Regarding Defendants' argument that Plaintiff lacks standing to sue, Plaintiff notes that, "Our state and federal courts always protect minors. This is why legal guardians and legal custodians are mandated. This is why conservators are appointed for incapacitated parties. They act for the minors and incapacitated parties and are responsible for protecting their interest, as required by law."[134] Plaintiff continues by noting that a settlement was reached in this matter with other Defendants, and

---

[127] *Id.* at 7 (quoting *Bridas*, 345 F.3d at 353).

[128] 269 F.3d 187 (3d Cir. 2001).

[129] Rec. Doc. 367 at 7 (quoting *Du Pont*, 345 F.3d at 196–97).

[130] 299 F.3d 462 (5th Cir. 2002).

[131] Rec. Doc. 367 at 8 (citing *Westmoreland,* 299 F.3d at 467).

[132] *Id.*

[133] *Id.* at 9.

[134] *Id.* at 10.

that permission had to be obtained from the Court for the guardians to settle on behalf of the minor.[135] According to Plaintiff, Defendants' argument that Plaintiff is not a proper party "does not square with this Court's finding" that the minor children are indispensable parties.[136]

While acknowledging Louisiana Revised Statute 9:2222, Plaintiff states that "Plaintiffs have a right to sue to recover funds that Morgan Keegan allowed to be stolen by Geller."[137] Additionally, Plaintiff cites several state court cases where banks were held liable for wrongfully transferring funds to a trustee.[138] Finally, Plaintiff says that this is a case where the beneficiaries do have standing to sue because "Geller the trustee, who is now in prison is not going to enforce anything for the Trust against co-tort feasors/co-conspirators."[139]

Plaintiff addresses Defendants' argument that there is no federal policy or statute prohibiting arbitration in this case by quoting 15 U.S.C.A. § 3902 (a)(1)(G), which states that arbitration agreements must "comply with any State law regarding deceptive, false, or fraudulent acts or practices."[140] Plaintiff explains that, "[C]ongress in including 15 U.S.C.A. § 3902 (a)(1)(G) in [the FAA] clearly shows and proves congress was not perempting the rights of citizens access to a court of law for every criminal or civil crime or fraudulent acts involving deceptive, false, or fraudulent acts or practices."[141]

---

[135] *Id.*

[136] *Id.* at 10–11.

[137] *Id.* at 12.

[138] *Id.* at 12–13.

[139] *Id.* at 13.

[140] *Id.* at 14, 16.

[141] *Id.* at 15.

Plaintiff also quotes Louisiana Code of Civil Procedure Article 1953, which states, "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."[142] Defendant interprets this statute to " mandate[ ] a safeguard that if breached the breaching party is denied arbitration protection and citizens have a right to a Court of law."[143] Thus, according to Plaintiff, "[u]nder state and federal law and 15 U.S.C.A. § 3902 (a)(1)(G), Defendants are estoppelled and prohibited from forcing arbitration against Plaintiffs who are not signors."[144]

Plaintiff addresses Defendants' equitable estoppel argument by citing to the case of *Hellenic Investment Fund, Inc. v. Det Norske Veritas*,[145] wherein the Fifth Circuit stated, "[f]or direct benefit estoppel to apply, the non-signatory must bring suit premises in part on the agreement."[146] Following *Hellenic Investment Fund*, Plaintiff contends that, "[i]n [sic] matter at Bar Plaintiffs have not sued the Defendants under any agreement and 'have not exploited' to any degree, let alone a degree which would warrant the application of this estoppel."[147]

Finally, Plaintiff opposes Defendants' argument for attorney's fees by stating, "Defendants have asked this Court to assess attorney fees and costs against the children, one of which is mentally

---

[142] *Id.* at 24.

[143] *Id.* at 16.

[144] *Id.* at 18.

[145] 464 F.3d 514 (5th Cir.2006).

[146] Rec. Doc. 357 at 18 (quoting *Hellenic Investment Fund*, 464 F.3d at 517).

[147] *Id.* at 18–19 (quoting *Hellenic Investment Fund*, 464 F.3d at 517).

incapacitated and his mother acts on his behalf as his conservator."[148] Plaintiff continues by claiming that after she sued Defendants for fraud, "Morgan Keegan responded with a 'so what' defense and sought to threaten the minors into giving up by seeking attorney fees and costs."[149] For these reasons, Plaintiff concludes that the Court should not award attorney's fees to Defendants.

## III. Law and Analysis

### A. Validity of an Arbitration Agreement

In determining whether a party may be compelled to arbitrate, the Fifth Circuit in *Jones v. Halliburton, Co.* articulated a two-step analysis.[150] The first step is comprised of two inquiries: whether a valid agreement to arbitrate exists, and whether the dispute in question falls within the scope of the agreement.[151] "If both questions are answered in the affirmative, [a] court then asks whether any federal statute or policy renders the claims nonarbitrable."[152]

Pursuant to United States Supreme Court precedent, "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."[153] This is true even where the party challenges the contract in which the arbitration clause is contained as having been fraudulently induced. In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, the plaintiff attempted to avoid arbitration by claiming that the contract, which contained an arbitration clause,

---

[148] *Id.* at 20.

[149] *Id.* at 21.

[150] *See Jones*, 583 F.3d at 233.

[151] *Id.* at 234.

[152] *Id.*

[153] *Buckeye*, 546 U.S. at 449.

was induced by fraudulent representations.[154] The Supreme Court held that the parties must arbitrate the matter because the language of the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally."[155] Rather, pursuant to the FAA, only "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it."[156]

Here, Plaintiff challenges the Client Agreement on the grounds that it "was [n]ever consummated."[157] However, because Plaintiff challenges the validity of the Client Agreement in general as opposed to the arbitration agreement within the Client Agreement, this question must be heard before an arbitrator pursuant to Fifth Circuit and Supreme Court precedent. Plaintiff raises no argument that the arbitration agreement itself specifically is invalid.

Moreover, the arbitration clause in the Client Agreement covers "all controversies . . . which may arise from any account or for any cause whatsoever," including disputes related to "events which occurred prior to, on or subsequent to the execution of this arbitration agreement."[158] Thus, because Plaintiff does not challenge the validity of the arbitration agreement and the arbitration agreement covers the issues and claims at dispute in this matter, the first part of the *Jones* analysis has been met.

---

[154] *Prima Paint*, 388 U.S. at 398.

[155] *Id.* at 404.

[156] *Id.* at 403–404; *see also Primerica*, 304 F.3d at 472 (compelling arbitration where defendant challenged validity of contract because "unless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute"); *Bhatia*, 818 F.2d at 418 (holding that plaintiff's claims had to be referred to arbitration because plaintiff "did not assert that the arbitration clause alone, as opposed to the Customer Agreement generally, was induced by [defendant's] misrepresentations and actions").

[157] Rec. Doc. 340 at 4.

[158] Rec. Doc. 335-4 at 2.

Next, a court must determine whether any federal statute or policy would render the claims at issue here nonarbitrable.[159] While Plaintiff cites to several state court cases that explain a bank's responsibility for trust funds, these decisions, even if they addressed the issue of arbitrating fraud claims—which they do not appear to do—would only address state law and policy, not federal law and policy. Plaintiff has not pointed to any federal statute or policy, nor is the Court aware of any federal statute or policy that would render Plaintiff's claims nonarbitrable. In fact, it appears that federal courts compel arbitration for similar claims, including those sounding in fraud.[160] Thus, *Jones's* second requirement in a court's analysis of whether to compel arbitration has also been met.

Notwithstanding this, Plaintiff further argues that she should not be bound by the arbitration agreement because she was not a signatory to the Client Agreement. Defendants assert that Plaintiff is bound by the arbitration agreement as a non-signatory under any one of three theories. First, Defendants invoke the third party beneficiary theory. "Under third party beneficiary theory, a court must look to the intentions of the parties at the time the contract was executed."[161] Pursuant to Louisiana law,[162] three elements must be satisfied for a court to find that the parties to a contract created a third-party beneficiary to the contract.[163] First, there should be a stipulation in favor of the

---

[159] *Jones,* 583 F.3d at 234.

[160] *See, e.g.*, *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220 (1987) (compelling securities fraud claims to proceed to arbitration); *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000) (noting that parties to arbitration agreements cannot avoid them by casting their claims in tort, rather than in contract.)

[161] *Bridas* 345 F.3d at 362.

[162] Neither party contests that Louisiana law applies or suggests that the law of another jurisdiction governs this issue.

[163] *Joseph*, 939 So.2d at 1212.

third-party that is "manifestly clear."[164] Second, there should be "certainty as to the benefit provided the third party."[165] Third, the benefit provided should not be a "mere incident" of the contract between the parties.[166] Here, all three elements are met. The Client Agreement notes that the account belonged to a trust, which by definition means that there was a third-party beneficiary.[167] Moreover, the Client Agreement states the specific benefits to be received by the beneficiaries—$4,000 a month. Thus, the benefits were certain.[168] Finally, these benefits were not incidental to the Trust but were the sole reason for creating the Trust. Thus, the Court finds that the facts indicate that the parties to the contract intended to create a third-beneficiary to the contract. Accordingly, Plaintiff is bound to the terms of the Client Agreement, including the arbitration clause, because she was an intended  third-party beneficiary to the Agreement.

Additionally, a non-signatory can be bound to an arbitration agreement under an agency theory.[169] Under this theory, a non-signatory can be bound to an arbitration agreement if one party signs the agreement as the agent of the non-signatory.[170] "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his

---

[164] *Id.*

[165] *Id.*

[166] *Id.*

[167] Rec. Doc. 335-4; *see also* La. R.S. 9:1731 (requiring that trust be administered by trustee "as a fiduciary for the benefit of another").

[168] *See* Rec. Doc. 335-7.

[169] *Wash. Mut. Finance Group, L.L.C. v. Bailey*, 364 F.3d 260 (finding that non-signatory was "bound to [contract's] terms under ordinary principles of contract and agency law" even though she did sign it).

[170] *See Bridas*, 345 F.3d at 356.

behalf and subject to his control, and consent by the other so to act."[171]

While Defendants argue that Plaintiff is bound by Geller's acts as trustee because he had the authority to bind the Trust and Plaintiff's "entire relationship with Morgan Keegan flowed through the Trust," Plaintiff appears to challenge whether Geller was a properly appointed trustee of the Trust at all. In support of this claim, Plaintiff puts forth Geller's testimony that "he did not know he was a Trustee of anything relating to Decedent, after 1994, and thought the Trust issue was dead in 1994."[172] Plaintiff additionally contends that the documents appointing Geller as trustee were doctored in some way.[173]

Nonetheless, even assuming Geller was properly appointed trustee of the Trust, Defendants cite no direct authority for the proposition that a trustee acts as the agent of not only the trust, but also the trust's beneficiaries as well. The Fifth Circuit has explained that "[i]f [the trustee] is subjected to the beneficiaries' control, the trustee also becomes an agent."[174] Thus, for an agent-principal relationship to exist between a trustee and a beneficiary, the trustee must be subject to the beneficiary's control. Yet Defendants point to no facts that would indicate Plaintiff and/or the other beneficiaries of the Trust exercised control over Geller that would have brought him into an agent-principal relationship with them. Defendants have failed to adequately articulate the fact of agency between Geller and Plaintiff as well as the nature and extent of Geller's authority to bind Plaintiff.

---

[171] *Id.* at 356–57 (internal citations and quotation marks omitted).

[172] Rec. Doc. 340 at 3.

[173] Rec. Doc. 281 at ¶¶ 32–33.

[174] *Moncrief v. United States*, 730 F.2d 276, 285 (5th Cir. 1984) (citing Restatement (Second) of Agency § 14B); *see also* Restatement (Second) of Trusts § 8, comment d ("An agency is created by the consent of the principal and the agent; a trust may be created without the knowledge or consent of the beneficiary or of the trustee.") (internal citations omitted).

Accordingly, the Court rejects Defendants' argument that Plaintiff is bound to the arbitration clause simply because Geller signed the Client Agreement as trustee of the Trust.

Finally, Plaintiff can be bound to the arbitration clause by virtue of equitable estoppel. "Under the equitable estoppel theory, a court looks to the parties' conduct after the contract was executed" to determine whether the parties accepted benefits under the contract.[175] Defendants argue that because Plaintiff accepted benefits under the contract  and cannot bring her claims without reference to the contract, Plaintiff is bound to the terms of the contract. Several out-of-circuit cases have held this.[176] Additionally, at least one unpublished Fifth Circuit case affirmed a district court's decision to compel non-signatories to arbitrate under a theory of equitable estoppel.[177] A published Fifth Circuit opinion in *Grigson v. Creative Artists Agency, L.L.C.*[178] involved the opposite situation as here, where a signatory to an arbitration agreement was trying to avoid arbitration on the grounds that the non-signatory had not been a party to the arbitration agreement. The Fifth Circuit rejected this argument and affirmed the district court's decision compelling arbitration.[179] Moreover, elsewhere the Fifth Circuit has noted that, "[n]umerous federal circuit courts, including this one, have recognized the operation of the doctrine of equitable estoppel on non-signatories in an

---

[175] *Id.* at 362.

[176] *Smith v. Multi-Financial Secs. Corp.*, 171 P.3d 1267 (Colo. App. 2007); *In re Jean F. Gardner Amended Blind Trust*, 70 P.3d 168, 170 (Wash. Ct. App. 2003); *see also Washington Mut. Fin. Grp.,* 364 F.3d at 267(noting that arbitration agreement can be operable against non-signatory under principle of equitable estoppal, "which precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes").

[177] *See, e.g.*, *Blaustein*, 449 F. App'x at 350.

[178] 210 F.3d 524 (5th Cir. 2000).

[179] *Id.* at 526–31.

30

arbitration context."[180] Thus, the general rule seems to be that equitable estoppel can operate to compel both a signatory and non-signatory to arbitrate claims.

Here, Plaintiff acknowledges accepting benefits from Morgan Keegan under the Client Agreement.[181] As such, Plaintiff can be bound to the terms of the Client Agreement under an equitable estoppel theory. Thus, the Court finds that this is an alternative ground on which the arbitration agreement is binding on Plaintiff. Therefore, because Plaintiff was either a third-party beneficiary to the Agreement or because Plaintiff is equitably estopped from challenging the Agreement, Plaintiff is bound by the arbitration clause.

### B. Award of Attorney's Fees to Defendants

Defendants seek an award of attorney's fees pursuant to both the FAA and the Client Agreement. However, the Fifth Circuit has previously noted that where an arbitration agreement provides that any dispute arising from the contract is to be submitted to arbitration, as is the case here, "a strong case c[an] be made that any award of attorney's fees, interest, and costs [should be] necessarily submitted to the arbitrators."[182] The Fifth Circuit continued that "[i]n such circumstances, where the parties made an agreement intended to avoid court litigation by resolving the entire dispute through arbitration, intervention by the court to award additional relief would be inconsistent with the language and policy of the Federal Arbitration Act." In this case, Defendants have vigorously

---

[180] *Washington Mut. Fin. Grp.*, 364 F.3d at 267 (citing *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728 (8th Cir. 2001); *Grigson*, 210 F.3d at 527; *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417–18 (4th Cir. 2000); *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 778 (2d Cir. 1995); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 756–58 (11th Cir. 1993); *Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838–39 (7th Cir. 1981)).

[181] Rec. Doc. 281 at ¶ 44.

[182] *Schlobohm v. Pepperidge Farm, Inc.*, 806 F.2d 578, 581 (5th Cir. 1986).

argued that the arbitration agreement is as broad as possible and covers "all controversies" arising between the parties.[183] Thus, for this Court to award attorney's fees, as Defendants request, would run contrary to both the Client Agreement, which provides that "all controversies" arising "from any cause whatsoever" be submitted to arbitration, and the policy of the FAA by inviting the Court to intervene in a matter that the parties had agreed to submit to arbitration.

### C. Plaintiff's Standing to Pursue Claims against Defendants

If arbitration is not mandated here, Defendants argue in the alternative that Plaintiff does not have standing to bring this lawsuit. Considering that standing may implicate the court's subject matter jurisdiction over this litigation,[184] the Court will defer ruling on Defendants' motion to dismiss for lack of standing and require the Defendants, who raised the issue, to brief the jurisdictional effect of its standing argument on the court's ability to rule on Defendants' motion to compel arbitration. Pending the Court's ruling, it will stay any effect or enforcement of its opinion compelling arbitration and denying or otherwise referring to arbitration Defendants' motion for attorneys fees.

### IV. Conclusion

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendants' Motion to Stay Pending Arbitration[185] is **GRANTED**, however its motion for attorney's fees is **DENIED** or otherwise referred to arbitration;

---

[183] Rec. Doc. 335-1 at 10 ("It is difficult to imagine a more expansively worded arbitration clause . . . .").

[184] *See Cornerstone Christian Sch. v. U. Interscholastic League*, 563 F.3d 127, 133-135 (5th Cir. 2009) (affirming district court's order granting defendants' motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1)).

[185] Rec. Doc. 335.

these aspects of the Court's order are **STAYED** pending further briefing and the Court's decision

on Defendants' motion to dismiss based on Plaintiff's alleged lack of standing.

      **IT IS FURTHER ORDERED** that Defendants further brief the Court on its motion to

dismiss for lack of standing and, specifically, whether a finding that Plaintiff lacks standing deprives

the Court of jurisdiction to decide Defendants' motion to compel arbitration.

      **IT IS FURTHER ORDERED** that Defendants provide such additional briefing by

September 3, 2014, and that Plaintiff is allowed until September 17, 2014 to file a response.

      **NEW ORLEANS, LOUISIANA**, this  22nd  day of August, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

33