**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TERRELL LEBEAUX WARREN INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILDREN FRANK WILLIAM WARREN, IV, TYRELL L. WARREN, ISAIAH M. WARREN, AND MYKIAH M. WARREN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2282** |
| **BENJAMIN GELLER, ET AL.** | **SECTION: "G"** |

## ORDER

Pending before the Court are two motions: (1) Defendants Raymond James & Associates, Inc., as successor to Morgan Keegan & Company, Inc., Frances "Polly" Moore, and Beatriz Cadena's (collectively "Defendants") "Motion to Confirm Arbitration Award and for Entry of Final Judgment;"[1] and (2) Plaintiff Terrell LeBeaux Warren individually and on behalf of Frank William Warren, IV, Tyrell L. Warren, Isaiah M. Warren, and Mykiah M. Warren's ("Plaintiff") "Motion to Vacate Arbitration Award."[2] Having considered the motions, the memorandum in support and opposition, oral argument, and the applicable law, the Court will grant the motion to confirm the arbitration award and deny the motion to vacate the arbitration award.

---

[1] Rec. Doc. 380.

[2] Rec. Doc. 381.

# I. Background

### A. Factual Background

Plaintiff filed the initial complaint in this action on September 12, 2011.[3] On August 21, 2012, Plaintiff filed an amended complaint.[4] On March 6, 2013, Plaintiff filed a second amended complaint.[5] The second amended complaint names Benjamin Geller ("Geller"),  Beatriz Cadena ("Cadena"), Frances Moore ("Moore"), Morgan Keegan & Company, Inc. ("Morgan Keegan"), Arlyn Nelson ("Nelson"), Virginia Insurance Company ("Virginia Insurance"), GE Life and Annuity Assurance Company ("GE"), Genworth Life and Annuity Insurance Company ("Genworth"), and Continental Casualty Company ("Continental") as defendants.[6] On January 23, 2014, all defendants except for Geller, Cadena, Moore, and Morgan Keegan were dismissed from the action.[7]

Plaintiff alleges that Geller was a sports agent and financial adviser to decedent Frank Warren ("Warren"), a former professional football player with the New Orleans Saints of the National Football League ("NFL").[8] Plaintiff is the widow of Frank Warren, who is bringing this action individually and on behalf of her four minor children who were fathered by Warren.[9]

---

[3] Rec. Doc. 1.

[4] Rec. Doc. 57.

[5] Rec. Doc. 281.

[6] *Id.* at ¶ 2.

[7] Rec. Doc. 356.

[8] Rec. Doc. 281 at ¶¶ 6, 12.

[9] *Id.* at 1.

Plaintiff alleges that in 1994, Geller suggested to Warren that he purchase a life insurance policy from Nelson.[10]

Plaintiff alleges that Nelson represented himself to be a licensed insurance broker, but this was false as he was not licensed as an agent to sell insurance in the State of Louisiana.[11] Plaintiff alleges that nonetheless, on September 26, 1994, Nelson, "who was located in Washington State, prepared and filled out" an application for a $1,000,000 life insurance policy for Warren and mailed the application to Geller.[12] Plaintiff alleges that Geller had Warren sign the document in New Orleans, Louisiana, and it was sent back to Geller in Washington State.[13] Plaintiff alleges that Warren paid all premiums until his death in 2002.[14]

Plaintiff alleges that upon Warren's death, Nelson made a claim to Genworth for payment of $1,000,000 under Warren's life insurance policy.[15] Plaintiff alleges that this money was to be paid to the Frank Warren Irrevocable Insurance Trust, of which Geller was trustee.[16] According to Plaintiff, Warren never appointed Geller as trustee of the Trust.[17] Rather, Plaintiff alleges that "the two Trust documents [needed to establish the Trust] were somehow notarized containing blanks,

---

[10] *Id.* at ¶ 12.

[11] *Id.*

[12] *Id.* at ¶ 17.

[13] *Id.* at ¶¶ 10–11.

[14] *Id.* at ¶ 22.

[15] *Id.* at ¶ 27.

[16] *Id.*

[17] *Id.* at ¶ 22 (referring to Geller as "the alleged trustee"); *see also id.* at ¶ 23 ("[Geller] never heard anything . . . regarding the proposed Trust documents. Geller stated that he believed the Trust issue to be over and/or dead.").

where the trustees were to be named and one of the Trust documents did not have the Parish where it was notarized, filled in [sic]."[18]

According to Plaintiff, investment bank Morgan Keegan received the proceeds from Warren's life insurance policy and put them into the Trust account of which it was in charge.[19] "The funds were then," according to Plaintiff, "through breach of fiduciary duty, negligence and fraud allowed to be jettisoned to Geller."[20] This was done, Plaintiff alleges, through the actions of Moore and Cadena, employees of Morgan Keegan, who acted in concert with Geller and Nelson to divert the money from the Trust to Geller after Nelson conspired with Gellar to open a Morgan Keegan account for the Trust.[21] According to Plaintiff, Geller depleted most of the Trust funds within nineteen months, leaving a balance of $189,468.92 by the end of December, 2004.[22] Plaintiff alleges that by December, 2007, all of the Trust funds were exhausted and the Trust account was closed with a balance of zero.[23]

Plaintiff brings, among other causes of action, claims against Geller, Cadena, Moore, and Morgan Keller for breach of fiduciary duty, breach of due diligence, negligence, fraud, and conversion.[24]

---

[18] *Id.* at ¶ 15.

[19] *Id.* at ¶ 9.

[20] *Id.*

[21] *Id.*

[22] *Id.* at ¶ 37.

[23] *Id.* at ¶40.

[24] *Id.* at ¶ 50.

## B. *Procedural Background*

Plaintiff filed the initial complaint in this action on September 12, 2011.[25] On August 21, 2012, with leave of Court, Plaintiff filed an amended complaint.[26] Then, on March 6, 2013, with leave of Court, Plaintiff filed a second amended complaint.[27]

On May 20, 2013, the Court stayed and administratively closed the matter pending resolution of a criminal case against Geller.[28] On October 24, 2013, the Court re-opened the matter following resolution of Geller's criminal trial.[29] On October 3, 2014, the Court granted a motion to stay the case again, pending arbitration.[30]

On January 30, 2019, Defendants filed the instant "Motion to Confirm Arbitration Award and for Entry of Final Judgment."[31] On February 6, 2019, Plaintiff filed the instant "Motion to Vacate Arbitration Award."[32] On February 20, 2019, Plaintiff filed an opposition to the motion to confirm.[33] On March 4, 2019, Defendants filed a reply in further support of the motion to

---

[25] Rec. Doc. 1

[26] Rec. Doc. 57.

[27] Rec. Doc. 281.

[28] Rec. Doc. 306.

[29] Rec. Doc. 317.

[30] Rec. Doc. 373.

[31] Rec. Doc. 380.

[32] Rec. Doc. 381.

[33] Rec. Doc. 391.

confirm.[34] On April 16, 2019, Defendants filed an opposition to the motion to vacate.[35] On April 24, 2019, the Court heard oral argument on both motions.[36]

## II. Parties' Arguments

### A. Defendants' Motion to Confirm Arbitration Award

### 1. Defendant's Arguments in Support of the Motion to Confirm Arbitration Award

Defendants assert that on May 18, 2016, Plaintiff initiated arbitration (the "Arbitration") against Defendants, asserting various claims related to the misappropriation of trust funds by Geller.[37] Defendants assert that at the conclusion of Plaintiff's case-in-chief, the Defendants moved to dismiss the Arbitration on the grounds that Plaintiff had failed to assert a claim under any regulation or law—state or federal—upon which damages could be awarded.[38] Defendants assert that the Panel deferred ruling on Defendants' motion until after the conclusion of their case-in-chief, at which time Defendants reasserted their motion and "the Panel unanimously found no civil responsibility by [them] for the criminal misdeeds of the Trustee [Geller]."[39] Defendants assert that accordingly, the Panel dismissed Plaintiff's claims against Defendants with prejudice.[40] Further, Defendants state that in the written Award, the Panel stated that "no breach of a fiduciary

---

[34] Rec. Doc. 398.

[35] Rec. Doc. 399.

[36] Rec. Doc. 396.

[37] Rec. Doc. 380 at 4.

[38] *Id.*

[39] *Id.*

[40] *Id.*

duty under any law or regulation [had been] presented [by Plaintiff]" and that Geller, as trustee, "was the person solely responsible for the asset destruction of the trust."[41]

Defendants argue that if Plaintiff wished to challenge the Award, she was required to file a motion to vacate, modify, or correct the Award by January 10, 2019, three months after the Award was delivered to the parties on October 10, 2018.[42] Defendants assert that all claims by Plaintiff against Defendants have been fully and finally resolved by the Award, which dismissed Plaintiff's claims against Defendants and denied "[a]ny and all claims for relief not specifically addressed [t]herein[.]"[43] Subsequently, Defendants argue that the claims that have been resolved against Defendants are "separate, distinct, and independent from any claims that may still remain against Geller" and thus the Court should enter final judgment now so that Defendants do not have to wait until proceedings with Geller conclude.[44]

## 2. Plaintiff's Opposition to the Motion to Confirm Arbitration Award

In opposition, Plaintiff argues that she did timely move to vacate the arbitration award because the award was entered on November 6, 2018 and she filed a motion to vacate three months later on February 6, 2019.[45] Plaintiff asserts that "a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."[46] Plaintiff claims that the Final Arbitration Award was rendered on November 6,

---

[41] *Id.*

[42] *Id.* at 6 (citing 9 U.S.C. § 12).

[43] *Id*. at 6–7 (citing Rec. Doc. 380-3 at 4).

[44] *Id*. at 7 (citing Rec. Doc. No. 356).

[45] Rec. Doc. 391 at 1.

[46] *Id*. at 2 (citing 9 U.S.C. § 9).

2018, and that Defendants refer to a partially executed award on October 10, 2018.[47] Plaintiff assert that the Court should look to the fully executed Final Arbitration Award, not the interim, partially executed award, as the action that started the three-month limitations period.[48]

### 3. Defendants' Reply in Further Support of the Motion

In reply, Defendants' reassert that the limitations period began to run on October 10, 2018 and expired on January 10, 2019.[49] Defendants argue that accordingly, Plaintiff's motion to vacate, filed on February 6, 2019, was untimely by 27 days.[50]

Defendants claim that the Award was delivered to the parties through FINRA's online portal and the parties were notified by e-mail on October 10, 2018.[51] Defendants claim that the award was signed by two of the three arbitrators who served on the arbitration panel, Mary Elizabeth Skelnik and Daniel Patrick Hurley, but not the third arbitrator, the Honorable Frank A. Little, Jr.[52] Defendants further claim that in the e-mail notification, the Award was referred to as "Executed Award with Two Signatures[.]"[53] Defendants claim that a letter from FINRA accompanied the Award, stating that:

> Attached please find the decision reached by the arbitrator(s) in the above-referenced matter. Accordingly, we have closed this case and removed it from our arbitration docket. As you will see, the Award has been signed by the majority of the Panel. Arbitrator Little is currently out of town, but has read the Award,

---

[47] *Id.* at 2–3 (citing Rec. Doc. 381–26).

[48] *Id.* at 3.

[49] Rec. Doc. 398 at 1.

[50] *Id.*

[51] *Id.* at 2 (citing Rec. Doc. 398-1).

[52] *Id.* (citing Rec. Doc. 382-4, at 9–10)

[53] *Id.* (citing Rec. Doc. 398-1).

concurred with its content and will sign the Award upon his return. Upon FINRA's receipt, Arbitrator Little's signature will be provided to you.[54]

Defendants state that the document refers to itself as the "Award" in various sections and that "neither the letter nor the Award itself indicates that the Award is conditional, stayed, or otherwise "not final."[55]

Defendants then assert that on November 6, 2018, FINRA sent the parties a letter and Arbitrator Little's signed signature page, which states that:

> On October 10, 2018, this office served the award on the parties with two arbitrator signatures. We have received the third signature, and are re-serving the award. Please note that service of the award with three signatures does not modify any of the information and applicable due dates referenced in FINRA's October 10, 2018 letter.[56]

Defendants assert that the Award attached to FINRA's November 6, 2018 letter is identical to the Award delivered to the parties on October 10, 2018, with the addition of Arbitrator Little's signature included on an extra page.[57] Defendants also assert that, the Award is publicly available on FINRA's website, where the "Date of Award" is indicated as "10/10/2018."[58]

Defendants claim that FINRA addresses this issue under Rule 12904(a), which provides in pertinent part, "[a]ll awards shall be in writing and signed by a majority of the arbitrators or as required by applicable law."[59] Further, Defendants assert that the FINRA website provides that "[i]n a three-arbitrator panel, an award is based on the vote of a majority of the arbitrators; a

---

[54] *Id.* (citing Rec. Doc. 382-4).

[55] *Id.* at 2–3.

[56] *Id.* at 4 (citing Rec. Doc. 398-2 at 1).

[57] *Id.* (citing Rec. Doc. 398-2 at 9).

[58] *Id.* (citing Arbitration Awards Online, FINRA, available at https://www.finra.org/arbitration-and-mediation/arbitration-awards-online?search=16-01380 (last accessed on February 24, 2019); Rec. Doc. 398-3).

[59] *Id.* at 5.

unanimous decision is not required . . . . Once the award is signed by a majority of the arbitrators, FINRA will send copies of the signed award to each party or representative of the party."[60] Defendants also claim that the Federal Arbitration Act does not require all arbitrators serving on a panel to sign an award in order to effectuate and render the award as final.[61] And Defendants claim that while the FAA controls here, the American Arbitration Association and the Louisiana Binding Arbitration Act also only require a majority of arbitrators to sign an award.[62]

Defendants argue that while there is no case law on this issue from the Fifth Circuit, federal case law outside the Fifth Circuit supports the conclusion that the effective date of the award is October 10, 2018, not November 6, 2018.[63] Defendants claim that the First Circuit has found "an arbitral award is deemed 'final' provided it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration[.]"[64] Defendants also point to a case from the Seventh Circuit, wherein the court addressed a previous version of FINRA Rule 12904(a) and calculated the limitations period based on the decision of a single member of an arbitration panel.[65] Defendants also point to various district court decisions outside the Fifth Circuit in which courts

---

[60] *Id.* (citing Decision & Award, FINRA, available at https://www.finra.org/arbitration-and-mediation/decision-award (last visited Feb. 25, 2019)).

[61] *Id.* at 5–6 (citing *Anglim v. Vertical Grp.*, No. 16-3269, 2017 WL 543245, at *9 (S.D.N.Y. Feb. 10, 2017) (ruling that the "legal argument that the Award was not 'delivered' until all three arbitrators signed fails on the merits" and that "the FAA does not by its terms impose the 'all signatures' requirement Petitioner ascribes to it.").

[62] *Id.* at 7–8 (citing La. Stat. § 9:4208 ("The award shall be in writing and shall be signed by the arbitrators or by a majority of them."); Antwine v. Prudential Bache Sec., Inc., 899 F. 2d 410, 412 (5th Cir. 1990)).

[63] *Id*. at 6.

[64] *Id.* (citing *Fradella v. Petricca*, 183 F. 3d 17, 19 (1st Cir. 1999)).

[65] *Id.* (citing *Olson v. Wexford Clearing Services Corp*, 397 F. 3d 488, 490–92 (7th Cir. 2005)).

have rejected arguments that a revision or addition of a signature effected the finality of an initial award.[66]

Finally, Defendants argue that "the FAA gives district courts no discretion in deciding whether to confirm an arbitration award where, as here, the limitations period has passed and no motion to vacate, modify, or correct an arbitral award has been filed."[67] Defendants argue that in this case, the Award must be confirmed because "[t]he purpose of the short periods prescribed in the federal and state arbitration statutes for moving courts to vacate an award is to accord the arbitration award finality in a timely fashion."[68]

## B. Plaintiff's Motion to Vacate Arbitration Award

## 1. Plaintiff's Arguments in Support of the Motion to Vacate Arbitration Award

Plaintiff asserts that the moving Defendants are responsible for Plaintiff's losses because Geller was only able to misappropriate the investment account "because the Investment Firm and Investment Advisors consciously disregarded their duties to reasonably investigate the trustee's obviously suspicious, fraudulent, and illegal behavior."[69] Plaintiff asserts that instead of investigating the trustee's transfers and spending of assets in the investment account, the firm and

---

[66] Id. at 7 (citing *Parsons, Brinckerhoff, Quade & Douglas, Inc. v. Palmetto Bridge Constructors*, 647 F. Supp. 2d 587, 593 (D. Md. 2009); *Tokura Const. Co. v. Corporacion Raymond, S. A.*, 533 F. Supp. 1274, 1275 (S.D. Tex. 1982); *Anglim v. Vertical Grp.*, No. 16-3269, 2017 WL 543245, at *9 (S.D.N.Y. Feb. 10, 2017) ("Petitioner's legal argument that the Award was not 'delivered' until all three arbitrators signed fails on the merits."); *Matter of Arbitration Between Vogel v. Citigroup Glob. Markets, Inc.*, No. 11-10092, 2011 WL 13254296, at *7 (D. Mass. Aug. 31, 2011) ("By submitting the additional signature, the panel presumably corrected an administrative error. The panel's subsequent correction of the signature page did not affect the finality of the arbitration award[.]"); *Success Vill. Apartments, Inc. v. Amalgamated Local 376, Int'l Union United Auto. Aerospace & Agric. Implement Workers of Am.*, 357 F. Supp. 2d 446, 449 (D. Conn. 2005)).

[67] *Id.* at 8.

[68] *Id.* (citing *Olson*, 397 F. 3d at 492).

[69] Rec. Doc. 381-1 at 1–2.

11

advisors "internally acknowledged and discussed the trustee's suspicious and highly questionable conduct yet opted to do nothing."[70]

Plaintiff asserts that the Court should vacate the arbitration award because the Panel "committed a manifest disregard of the law" when it reached the conclusion that "the Investment Firm and Investment Advisors were not required to conduct any investigation into the obviously suspicious and fraudulent behavior," despite acknowledging the applicable law requiring an investment firm or advisor to investigate suspicious activity.[71] Further, Plaintiff states that the Panel failed to address or resolve four of the Plaintiff's five causes of action, despite expressly acknowledging that all these claims were at issue.[72]

Plaintiff states that the FAA provides the grounds on which a district court may vacate an arbitration award: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[73] Plaintiff also states that the Supreme Court and the Fifth Circuit have determined in the past that "manifest disregard of the law" by an arbitration panel is a valid basis on which to vacate an arbitration award.[74] Plaintiff asserts that "manifest

---

[70] *Id.* at 2.

[71] *Id.* at 2–3.

[72] *Id.*

[73] *Id.* at 10–11 (citing 9 U.S.C. § 10).

[74] *Id.* at 11 (citing *See Wilko v. Swan*, 346 U.S. 427, 436 (1953); *Prestige Ford v. Ford Dealer Computer*

disregard of law" means more than a mere error or misunderstanding with respect to the law, but instead means that the arbitration panel recognized the existence of the governing legal principle and nonetheless decided to ignore it.[75] Plaintiff recognizes that the Supreme Court decided in *Hall Street Associates, L.L.C. v. Mattel, Inc.*[76] that "the statutory grounds set forth by the Federal Arbitration Act are the only grounds by which a federal district court may vacate an arbitration award."[77] However, Plaintiff also argues that "in the aftermath of the *Hall Street* decision, there has developed a circuit split over whether a federal district court may still vacate an arbitration award when an arbitration panel manifestly disregards the law" and that "neither the Supreme Court nor the Fifth Circuit, despite recent opportunities to do so" have rendered an opinion on this issue.[78] Therefore, Plaintiff argues that this Court should apply the Fifth Circuit's pre-*Hall Street* jurisprudence and allow vacatur under the "manifest disregard of the law" standard.[79]

Plaintiff argues that vacatur is appropriate here because the Panel acknowledged FINRA regulations are applicable to the Investment Firm and Investment Advisors in this action, but

---

*Services, Inc.*, 324 F.3d 391, 395 (5th Cir. 2003) ("This Court has adopted the 'manifest disregard of the law' standard as a non-statutory ground for vacating an arbitration award.")).

[75] *Id.* at 12–13 (citing *Prestige Ford*, 324 F.3d at 391).

[76] 552 U.S. 576 (2008).

[77] Rec. Doc. 381-1 at 11.

[78] *Id.* at 11–12 (citing *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010) ("We do not decide today whether 'manifest disregard' survives our decision in [*Hall Street*] as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth in 9 U.S.C. § 10."); *McKool Smith, P.C. v. Curtis Int'l, Ltd.*, 650 Fed. Appx. 208, 211–12, n.3 (5th Cir. 2016) ("While we have yet to explicitly decide whether. the [manifest disregard basis] for vacatur [] can be statutory grounds for vacatur, we need not decide this issue today."); *Wachcovia Sec., L.L.C. v. Brand*, 671 F.3d 472, 480 (4th Cir. 2012); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009); *Stolt-Nielsen, SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 95 (2d Cir. 2008); *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 Fed. Appx. 415, 419 (6th Cir. 2008); *McKool Smith*, 650 Fed. Appx. at 212, n.3. *But see Affymax, Inc. v. Ortho–McNeil–Janssen Pharm., Inc.*, 660 F.3d 281, 285 (7th Cir. 2011); *Frazier v. CitiFinancial Corp., L.L.C.*, 604 F.3d 1313, 1323–24 (11th Cir. 2010)).

[79] *Id.* at 12–13.

Defendants did not fulfill their obligation under these regulations.[80] Plaintiff argues that under these regulations, a broker/dealer has an on-going obligation to exercise reasonable diligence to know the scope of and limitations on every person's authority to act in furtherance of an account, and to ensure that the broker/dealer is not facilitating a fraudulent scheme.[81] Plaintiff argues that an investment firm or advisor should report a transaction if it "knows, suspects, or has reason to suspect that" (1) a transaction involves funds derived from illegal activity or involves the use of the party to facilitate illegal activity; (2) is meant to evade reporting requirements; or (3) serves no business or lawful purpose and is not the type of transaction that would be expected of the customer.[82]

Plaintiff argues that in the present matter, "the arbitration panel was supplied with and acknowledged the existence of these FINRA rules and regulations, as well as the concomitant duties flowing therefrom."[83] Plaintiff also argues that "the factual background indisputably demonstrated that the Investment Firm and Investment Advisors were aware of the Trustee's misbehavior, internally acknowledged that the Trustee's misbehavior was suspicious and unusual, and opted to do nothing except continue allowing the Trustee to deplete the entire corpus of the

---

[80] *Id.* at 13–14.

[81] *Id.* at 15.

[82] *Id.* (citing FINRA, Notice to Members 02–47, Treasury Issues Final Suspicious Activity Reporting Rule for Broker/Dealers, available at http://www.finra.org/industry/notices/02-47; FINRA, Notice to Members 12–55, Guidance on FINRA's Suitability Rule ("Finally, broker-dealers must keep in mind that, in addition to suitability and supervisory responsibilities, firms have other regulatory obligations to investigate unusual activity."), available at http://www.finra.org/industry/notices/12-55; FINRA, What to Expect: Anti-Money Laundering Reviews During Routine Examinations, (stating that FINRA rules "require firms to identify and report any 'suspicious activity'"), available at http://www.finra.org/industry/what-expect-anti-money-laundering-reviews-duringroutine- examinations.

[83] *Id.* at 17 (citing Rec. Doc. 381-26 at 3 ("Claimants objected, stating that Respondents breached the duty of due diligence, duty of honor, and duty to investigate unusual activity with the Frank Warren Irrevocable trust account.")).

Trust."[84] Therefore, Plaintiff argues that vacatur is appropriate because the Panel acknowledged the correct standard, but failed to properly apply the law.[85]

## 2. Defendants' Opposition to Plaintiff's Motion to Vacate Arbitration Award

In opposition, Defendants argue that the motion is untimely and that it fails on the merits.[86] First, Defendants argue that Plaintiff's motion is untimely because it was filed after the limitations period expired.[87] In doing so, Defendants reassert arguments in support of their motion to confirm arbitration award that FINRA, the FAA, and case law from outside the Fifth Circuit hold that the limitations period runs from when a majority of the arbitrators sign and issue an award.[88]

Second, Defendants argue that even if the motion had been timely filed, it should still be denied on the merits.[89] Defendants argue that the Fifth Circuit has recognized a "federal policy favoring arbitration,"[90] and thus that "arbitration awards are peculiarly insulated from judicial review."[91] Further, the Fifth Circuit has specified that a district court's review of an arbitration award is "extraordinarily narrow."[92]

---

[84] *Id.* (citing Rec. Doc. 381-20 at ¶¶ 27–39; Rec. Doc. 381-21 at 92:1–93:13, 104:17–106:17; Rec. Doc. 381-22 at 37:2–40:7).

[85] *Id.*

[86] Rec. Doc. 399 at 1.

[87] *Id.* at 7.

[88] *Id.* at 8–11.

[89] *Id.* at 12.

[90] *Id.* (citing *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999); *see Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

[91] *Id.* (citing *Container Prod., Inc. v. United Steelworkers Local 5651*, 873 F. 2d 818, 819 (5th Cir. 1989)).

[92] *Id.* (citing *Weinberg v. Silber*, 2003 WL 147530, at * 2 (5th Cir. Jan. 6, 2003); *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 380 (5th Cir. 2004); *Pershing LLC v. Kiebach*, No. 14-2549, 2017 WL 2226130, at *2 (E.D. La. May 22, 2017), *aff'd sub nom.* 721 F. App'x 376 (5th Cir. 2018); *Tortorich v. Musso*, No. 07-3912, 2007 WL 3244396, at *2 (E.D. La. Nov. 1, 2007) ("Courts 'apply a highly deferential standard when reviewing arbitration

Defendants argue that the Fifth Circuit has found that the statutory grounds for vacatur under the FAA are the only permissible grounds for vacatur and Plaintiff has not asserted a basis under any of these grounds.[93] Defendants argue that the Fifth Circuit's previous opinions recognizing a separate ground for vacatur based on "manifest disregard of the law" have since been rejected by the Fifth Circuit.[94]

Defendants also argue that even if the Court were to consider the manifest disregard standard, Plaintiff has failed to show that the panel manifestly disregarded the law.[95] Defendants state that to show a manifest disregard for the law, Plaintiff must show that the arbitrators "appreciated the existence of a clearly governing [legal] principle but decided to ignore or pay no attention to it."[96] Additionally, Defendant asserts that "the governing law ignored by the arbitrators must be well defined, explicit, and clearly applicable."[97]

Defendants argue that Plaintiff fails to meet this standard for several reasons. First, Defendants argue that Plaintiff does not point to violation of a law, but rather an alleged violation of a FINRA rule, which courts have found are not equivalent to a "law" under the standard.[98]

---

awards.'" (quoting *Int'l Chem. Workers Union v. Columbian Chems. Co.*, 331 F. 3d 491, 494 (5th Cir. 2003)))).

[93] *Id.* at 13–14.

[94] *Id.* at 14 (citing *Markets, Inc. v. Bacon*, 562 F.3d 349 (5th Cir. 2009); *Citigroup Glob. Markets, Inc. v. Bacon*, 562 F. 3d 349, 358 (5th Cir. 2009)); *cf. Brabham v. A.G. Edwards & Sons Inc.*, 376 F. 3d 377, 381 (5th Cir. 2004) (holding "manifest disregard" is "nonstatutory" and not under the ambit of the FAA)).

[95] *Id.* at 15.

[96] Id. (citing *Brabham*, 376 F. 3d at 381 (emphasis added) (quoting another source) (internal quotation marks and brackets omitted)).

[97] *Id.*

[98] *Id.* (citing *Goldman v. Citigroup Glob. Markets Inc.*, No. 12-4469, 2015 WL 2377962, at *4 (E.D. Pa. May 19, 2015), *aff'd*, 834 F. 3d 242 (3d Cir. 2016) ("allegations that the [P]anel manifestly disregarded FINRA rules do not constitute a valid claim for manifest disregard of federal law"); *Doscher v. Sea Port Grp. Sec., LLC*, No. 15-384, 2015 WL 4643159, at *2 (S.D.N.Y. Aug. 5, 2015), *vacated on other grounds*, 832 F. 3d 372 (2d Cir. 2016) (quoting Goldman, 2015 WL 2377962, at *4) (citing *Ford v. Hamilton Invs., Inc.*, 29 F. 3d 255, 259 (6th Cir. 1994); *Interwest Intern. Equities Corp. v. Aberlich*, No. 12-13750, 2013 WL 1316997, at *4 (E D. Mich. Mar. 29, 2013); *Dreyfus Serv. Corp. v. Gold*, No. 02-9415, 2002 WL 31802347, at *1 (S.D.N.Y. Dec. 12, 2002); *Appl. of Prudential*

Second, Defendants argue that Plaintiff "merely assert[s] in conclusory fashion that the Panel disregarded the FINRA Rules because the facts 'indisputably demonstrated' [Defendants] violated them."[99] Defendants argue that Plaintiff is not asserting the panel disregarded the rule, but rather, that the panel got the outcome wrong.[100] Third, Defendants argue that the "duty to investigate" on which Plaintiff relies refers to "suspicious activity reports" related to anti-money laundering, which does not apply to the instant case.[101] Further, Defendants argue that the "duty to investigate" under FINRA or the Bank Secrecy Act does not include a private cause of action upon which liability may be imposed.[102]

## III. Law and Analysis

### A. Legal Standard

The Federal Arbitration Act provides United States district courts with jurisdiction to confirm arbitration awards if any party to the arbitration applies for an order to confirm.[103] The Fifth Circuit has held that when parties agree to submit to the rules of the American Arbitration Association, the "arbitration will be deemed both binding and subject to entry of judgment unless

---

*Sec. Inc.*, 795 F. Supp. 657, 659 (S.D.N.Y. 1992); *Apollo Property Partners, LLC v. Newedge Fin., Inc.*, 08-1803, 2009 WL 778108, at *2 & n.14 (S.D. Tex. Mar. 20, 2009) ("As many courts have held, a breach of NASD rules is simply a breach of a private association's rules, although that association is one which is closely related to the SEC, and therefore does not present a question which arises under the laws of the United States." (internal quotation marks omitted) (citing cases)))).

[99] *Id.* at 16.

[100] *Id.*

[101] *Id.* at 17.

[102] *Id.*

[103] 9 U.S.C. § 9 ("If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.").

the parties expressly agree otherwise."[104] The district court's review of an arbitration award is "extraordinarily narrow"[105] and "exceedingly deferential."[106] Moreover, a "district court should enforce an arbitration award as written—to do anything more or less would usurp the tribunal's power to finally resolve disputes and undermine the pro-enforcement policies of the New York Convention."[107]

9 U.S.C. § 10(a) provides the statutory bases for vacatur of an arbitration award. According to the statute, the district court has the authority to vacate an arbitration award if: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers. 9 U.S.C. § 11 permits a United States district court to modify or correct an arbitration award in any of the following cases, in order to "effect the intent of the award and promote justice between the parties:" (a) where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award; (b) where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or (c) where the award is imperfect in matter of form not affecting the merits of the controversy. "Under the terms of § 9, a court must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed in §§ 10 and 11."[108]

---

[104] *McKee*, 45 F.3d at 983.

[105] *Prestige Ford v. Ford Dealer Computer Servs., Inc.*, 324 F.3d 391, 393 (5th Cir. 2003).

[106] *Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C.*, 487 F.3d 255, 258 (5th Cir. 2007).

[107] *Wartsila Finland Oy v. Duke Capital L.L.C.*, 518 F.3d 287, 292 (5th Cir. 2008).

[108] *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008).

## B. Analysis

### 1. Timeliness of the Motion to Vacate

Defendants assert that the three-month limitations period for a motion to vacate the Arbitration Award began to run on October 10, 2018 when the Award was issued with the signature of two arbitrators, and that the limitations period subsequently expired on January 10, 2019.[109] Therefore, Defendants argue that Plaintiff's motion to vacate, filed on February 6, 2019, was untimely by 27 days.[110] In response, Plaintiff claims that the motion to vacate was not untimely as the Final Arbitration Award was rendered on November 6, 2018, only after it was signed by all three arbitrators, and that the award issued on October 10, 2018 did not start the limitations period as it was only partially executed.[111]

FINRA Rule 12904(a), provides in pertinent part, "[a]ll awards shall be in writing and signed by a majority of the arbitrators or as required by applicable law." The Award in the instant case was signed by two of the three arbitrators on October 10, 2018, and then signed by the third arbitrator on November 6, 2019.[112] The Fifth Circuit has not decided whether the limitations period begins to run when an award signed by a majority of the arbitrators, or whether the limitations period only begins to run when an award is signed by all arbitrators. Defendants point to federal courts outside the Fifth Circuit in support of their assertion that the limitations period begins to run when a majority of the arbitrators sign the award.[113]

---

[109] Rec. Doc. 398 at 1.

[110] *Id.*

[111] Rec. Doc. 391 at 2–3 (citing Rec. Doc. 381–26).

[112] Rec. Doc. 398 at 1.

[113] *See* Rec. Doc. 391 at 2–3.

The First Circuit has found "an arbitral award is deemed 'final' provided it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration."[114] The Seventh Circuit, addressing a prior version of FINRA Rule 12904(a), has calculated the limitations period based on the decision of a single member of an arbitration panel.[115] Various district courts outside the Fifth Circuit have found that a revision or addition of a signature in an arbitration award did not affect the finality of an initial award for the purposes of the limitation period.[116]

Here, there is evidence to indicate that the Award presented on October 10, 2018 was final. The document issued by FINRA refers to itself as the "Award" and does not indicate the Award was conditional or lacked finality, even thought it was only signed by two of the three panel members.[117] The e-mail notification accompanying the Award referred to it as the "Executed Award with Two Signatures[.]"[118] The FINRA letter accompanying the Award stated:

> Attached please find the decision reached by the arbitrator(s) in the above-referenced matter. Accordingly, we have closed this case and removed it from our arbitration docket. As you will see, the Award has been signed by the majority of the Panel. Arbitrator Little is currently out of town, but has read the Award, concurred with its content and will sign the Award upon his return. Upon FINRA's receipt, Arbitrator Little's signature will be provided to you.[119]

---

[114] *Fradella v. Petricca*, 183 F. 3d 17, 19 (1st Cir. 1999).

[115] *Olson v. Wexford Clearing Services Corp*, 397 F. 3d 488, 490–92 (7th Cir. 2005).

[116] *Parsons, Brinckerhoff, Quade & Douglas, Inc. v. Palmetto Bridge Constructors*, 647 F. Supp. 2d 587, 593 (D. Md. 2009); *Tokura Const. Co. v. Corporacion Raymond, S. A.*, 533 F. Supp. 1274, 1275 (S.D. Tex. 1982); *Anglin v. Vertical Grp.*, No. 16-3269, 2017 WL 543245, at *9 (S.D.N.Y. Feb. 10, 2017) ("Petitioner's legal argument that the Award was not 'delivered' until all three arbitrators signed fails on the merits."); *Matter of Arbitration Between Vogel v. Citigroup Glob. Markets, Inc.*, No. 11-10092, 2011 WL 13254296, at *7 (D. Mass. Aug. 31, 2011) ("By submitting the additional signature, the panel presumably corrected an administrative error. The panel's subsequent correction of the signature page did not affect the finality of the arbitration award[.]"); *Success Vill. Apartments, Inc. v. Amalgamated Local 376, Int'l Union United Auto. Aerospace & Agric. Implement Workers of Am.*, 357 F. Supp. 2d 446, 449 (D. Conn. 2005).

[117] *See generally* Rec. Doc. 382-4.

[118] Rec. Doc. 398-1.

[119] Rec. Doc. 382-4.

On November 6, 2018, FINRA sent a letter to the parties with the updated signature page.[120] In the letter, FINRA stated that it was "re-serving the award," and "[p]lease note that service of the award with three signatures does not modify any of the information and applicable due dates referenced in FINRA's October 10, 2018 letter."[121] The Award issued on October 10, 2018 and the Award issued on November 6, 2018 are substantially the same, with the only change being the addition of a third signature.[122] Based on these facts, the Court sees no reason to question the finality of the initial award granted on October 10, 2018.

However, at oral argument, Plaintiff asserted that the Second Circuit in *The Hartbridge* recognized that a party may raise the statutory grounds for vacatur as a defense to a motion to confirm even after the limitations period has expired.[123] While some district courts outside the Fifth Circuit have relied on this case for the proposition asserted by Plaintiff, the Fifth Circuit has not addressed this issue.[124] Therefore, as there exists independently sufficient reasons to deny the motion to vacate, this Court need not decide if the motion to vacate is time-barred.

**2. Manifest Disregard of the Law as a Standard**

Plaintiff claims that the Fifth Circuit "has adopted the 'manifest disregard of the law' standard as a non-statutory ground for vacating an arbitration award."[125] Prior to 2008, the Fifth

---

[120] Rec. Doc. 398-2.

[121] *Id.* at 1.

[122] *See* Rec. Doc. 382-4, Rec. Doc. 398-2.

[123] *See The Hartbridge*, 57 F.2d 672, 673 (2d Cir. 1932), cert. denied, *Munson Steamship Line v. North England Steamship Co.*, 288 U.S. 601, 53 (1933) ("[t]here is authority for the proposition that even after the statutory period for moving to vacate an award has expired, a party may use the statutory grounds for vacation in defense of a motion to confirm").

[124] *See Riko v Enterprises, Inc. v. Seattle Supersonics Corp.*, 357 F.Supp. 521 (S.D.N.Y. 1973); *Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 364 v. Ruan Transport Corp.* 473 F.Supp. 298 (N.D.I.N. 1979).

[125] Rec. Doc. 381-1 at 11 (citing *Prestige Ford v. Ford Dealer Computer Services, Inc.*, 324 F.3d 391, 395

Circuit unequivocally recognized "manifest disregard of the law" as a non-statutory basis for vacatur.[126]

However, in the 2008 case *Hall Street Associates, L.L.C. v. Mattel Inc.*, the United States Supreme Court declined to recognize "manifest disregard of the law" as a non-statutory, independent ground for vacatur.[127] Immediately following *Hall Street*, the Fifth Circuit adopted the Supreme Court's position, stating that "to the extent that manifest disregard of the law constitutes a nonstatutory ground for vacatur, it is no longer a basis for vacating awards under the FAA."[128]

But then, in the 2010 case *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, the Supreme Court backtracked by stating that it would "not decide today whether 'manifest disregard' survives our decision in [*Hall Street*] as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth in 9 U.S.C. § 10."[129] Following *Stolt-Nielsen*, a Circuit split has developed. The Second, Fourth, Sixth, and Ninth Circuits have recognized "manifest disregard of law" as a basis for vacatur.[130] Whereas the Seventh and Eleventh Circuits have

---

(5th Cir. 2003)).

[126] *Prestige Ford v. Ford Dealer Computer Services, Inc.*, 324 F.3d 391, 395 (5th Cir. 2003) ("This Court has adopted the 'manifest disregard of the law' standard as a non-statutory ground for vacating an arbitration award."); *see also Wilko v. Swan*, 346 U.S. 427, 436 (1953); *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 Fed. Appx. 415, 419 (6th Cir. 2008) ("It is worth noting that since *Wilko*, every federal appellate court has allowed for the vacatur of an award based on an arbitrator's manifest disregard of the law.").

[127] *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584–85 (2008).

[128] *Citigroup Glob. Markets, Inc. v. Bacon, 562 F.3d 349, 358 (5th Cir. 2009) (citing Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008)); see also Markets, Inc. v. Bacon*, 562 F.3d 349 (5th Cir. 2009); *cf. Brabham v. A.G. Edwards & Sons Inc.*, 376 F. 3d 377, 381 (5th Cir. 2004) (holding "manifest disregard" is "nonstatutory" and not under the ambit of the FAA)).

[129] *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010).

[130] *See Wachovia Sec., L.L.C. v. Brand*, 671 F.3d 472, 480 (4th Cir. 2012); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009); *Stolt-Nielsen, SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 95 (2d Cir. 2008); *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 Fed. Appx. 415, 419 (6th Cir. 2008).

concluded that "manifest disregard of law" is no longer a legitimate basis for vacatur.[131] Neither the Supreme Court nor the Fifth Circuit have clarified their position following *Stolt-Neilsen*.[132]

As the Fifth Circuit has declined to determine whether "manifest disregard of law" is a legitimate basis for vacatur, the Court will analyze the merits of Plaintiff's claims under this basis and the statutory basis.

### 3. Merits of the Motion to Vacate

Plaintiff conceded at oral argument that it does not have a case for vacatur under the traditional statutory grounds for vacatur provided in the FAA. The statutory grounds for vacatur are: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[133] Plaintiff does not allege that the Award was procured by fraudulent means, that the arbitrators were partial, that the arbitrators committed misconduct, or that the arbitrators improperly executed their powers.

Instead, Plaintiff alleges that the Panel "committed a manifest disregard of the law" when it reached the conclusion that "the Investment Firm and Investment Advisors were not required to

---

[131] *Affymax, Inc. v. Ortho–McNeil–Janssen Pharm., Inc.*, 660 F.3d 281, 285 (7th Cir. 2011); *Frazier v. CitiFinancial Corp., L.L.C.*, 604 F.3d 1313, 1323–24 (11th Cir. 2010).

[132] *See McKool Smith, P.C. v. Curtis Int'l, Ltd.*, 650 Fed. Appx. 208, 211–12, n.3 (5th Cir. 2016) ("While we have yet to explicitly decide whether the [manifest disregard basis] for vacatur [] can be statutory grounds for vacatur, we need not decide this issue today.")

[133] 9 U.S.C. § 10.

conduct any investigation into the obviously suspicious and fraudulent behavior," despite acknowledging the applicable law requiring an investment firm or advisor to investigate suspicious activity.[134] Further, Plaintiff states that the Panel failed to address or resolve four of the Plaintiff's five causes of action, despite expressly acknowledging that all these claims were at issue.[135]

Manifest disregard means "more than error or misunderstanding with respect to the law."[136] Assuming that the "manifest disregard" ground is valid, in order to succeed on a motion to vacate, Plaintiff must show that the arbitrators "appreciated the existence of a clearly governing [legal] principle but decided to ignore or pay no attention to it."[137] Additionally, "the governing law ignored by the arbitrators must be well defined, explicit, and clearly applicable."[138] Defendants argue that the FINRA rules referenced by Plaintiff in this case do not constitute governing law.[139] However, the Fifth Circuit has not ruled on this issue, and the Court finds that there exist independent grounds to deny vacatur, so the Court will not rule on this issue.

Plaintiff argues that the Panel's decision was the wrong decision and that the Panel misapplied FINRA rules related to Defendants duty to protect clients and investigate suspicious account activity.[140] In the Award, the Panel stated that during the arbitration proceedings Defendants moved to dismiss Plaintiff's claims "on the grounds there was not any breach of a fiduciary duty or regulation by Respondents." The Panel also stated that Plaintiff objected to

---

[134] Rec. Doc. 381-1 at 2–3.

[135] *Id.*

[136] *Brabham v. A.G. Edwards & Sons Inc.*, 376 F. 3d 377, 381 (5th Cir. 2004) (internal citation omitted).

[137] *Id.* (internal citation omitted).

[138] *Id.* (internal citation omitted).

[139] Rec. Doc. 399 at 15–16.

[140] *See* Rec. Doc. 381-1 at 13–19.

dismissal of her claims on the basis that Defendants "breached the duty of due diligence, duty of honor, and the duty to investigate unusual activity in connection in connection with the [Trust]."[141] The Panel ultimately determined that "the Trustee of the trust was the person solely responsible for the asset destruction of the trust."[142] "Thus, the Panel unanimously determined to grant Respondents' Motion to Dismiss, with prejudice…."[143] In regards to Defendants at issue in the instant motion, "[t]he Panel found that no breach of a fiduciary duty under any law or regulation was presented."[144] Based on the plain language of the award, the Panel considered the existence of governing law, but found that a fiduciary duty did not exist under this law. Plaintiff's issue with the arbitration decision is not that the Panel ignored the law entirely, but that the Panel did not reach Plaintiff's desired outcome when applying the law. Therefore, even under the "manifest disregard of the law" standard, Plaintiff's motion for vacatur fails.

As Plaintiff presents no other grounds to vacate the arbitration award, the Court will deny the motion to vacate. As stated above, "[u]nder the terms of § 9, a court must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed in §§ 10 and 11."[145] Accordingly, having no grounds to vacate, modify, or correct the Award, the Court will confirm the Award.

---

[141] Rec. Doc. 381-26 at 3.

[142] *Id.*

[143] *Id.*

[144] *Id.*

[145] *Hall St. Assocs., L.L.C.*, 552 U.S. at 582.

## IV. Conclusion

For the reasons stated above, the Court will confirm the arbitration award. Even if the Court were to consider the manifest disregard of the law standard, Plaintiff argues that the Panel misapplied the law, not the Panel disregarded the law. Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Confirm Arbitration Award[146] is **GRANTED** and the Motion to Vacate Arbitration Award[147] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this ___3rd___ day of May, 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[146] Rec. Doc. 380.

[147] Rec. Doc. 381.